IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

|  |  |  |
|---|---|---|
| FRANCES HIDO, on behalf of herself and all others similarly situated, 8362 Shorthorn Drive Sagamore Hills, OH 44067 | ) ) ) ) | CASE NO.: 5:17-cv-01116-BYP |
|  | ) | JUDGE BENITA Y. PEARSON |
| DENNIS HIDO, on behalf of himself and all others similarly situated, 8362 Shorthorn Drive Sagamore Hills, OH 44067 | ) ) ) ) ) | <u>FIRST AMENDED CLASS ACTION COMPLAINT— INJUNCTIVE AND MONETARY RELIEF SOUGHT</u> |
|  | ) |  |
| JOE KOVACS, on behalf of himself and all others similarly situated 8625 Westfield Park Dr. Olmsted Township, OH 44138 | ) ) ) ) ) |  |
| BRITTANY KOVACS, on behalf of herself and all others similarly situated 8625 Westfield Park Dr. Olmsted Township, OH 44138 | ) ) ) ) ) |  |
| Plaintiffs, | ) ) |  |
| vs. | ) ) ) |  |
| HOME DEPOT U.S.A., INC. c/o Corporation Service Company 50 West Broad Street Suite 1330 Columbus, OH 43215 | ) ) ) ) ) |  |
| Defendants. | ) ) |  |

Plaintiffs, Frances and Dennis Hido ("Hidos"), together with Joe and Brittany Kovacs ("Kovacs"), on behalf of themselves and everyone else similarly situated, as defined herein, by and through the undersigned counsel, aver, allege, and state as their Complaint against Defendant Home Depot U.S.A., Inc. ("Home Depot" or "Defendant") as follows:

## SUMMARY OF ACTION

1. Home Depot is and was illegally and unlawfully taking money for construction and general contracting services—specifically, the performance of home repair, home improvement, and home remodeling services—in the State of Ohio, which violates various Ohio and local laws, including the Ohio Consumer Sales Practices Act ("CSPA") in Ohio R.C. 1345.01 *et seq.*, or Home Construction Service Supplier Act in Ohio R.C. 4722.01 *et seq.* The Hidos and the Kovacs, on behalf of themselves and all others similarly situated, seek monetary damages and injunctive relief against Home Depot based on theories of (1) breach of contract, seeking restitution; (2) unjust enrichment, seeking restitution; (3) violations of the CSPA, seeking restitution damages, injunctive relief, and reasonable attorney fees; (4) violations of R.C. 4722.01 *et seq.* (in the alternative to CSPA liability), seeking restitution damages, injunctive relief, and reasonable attorney fees; and (5) violations of the Summit County Consumer Protection Ordinance, seeking trebled restitution damages, injunctive relief, declaratory relief, and reasonable attorney fees as well as all other remedies available under that ordinance. The Plaintiffs also seek pre-judgment interest, post-judgment interest, and costs.

2. The Hidos, who had hired Home Depot to perform a kitchen remodeling project for them at their home in Sagamore Hills, Ohio, located in Summit County, including the

2

performance of drywall, carpentry, cabinet, electrical, and other work, paid Home Depot tens of thousands of dollars to complete work. Home Depot then subcontracted work to one or more subcontractors. Despite representations to the contrary, Home Depot was not licensed or bonded to do work in Summit County, Ohio, nor was it in any other location outside of only a handful of communities in the State of Ohio. Home Depot, as a general contractor, is obligated to be licensed in each community in which it acts as a general contractor at the time it is doing such work. It is also obligated to obtain building permits. Home Depot has a habit, history, and engages in a pattern and practice of doing business as a general contractor without obtaining required licensing or obtaining any permits.

3. The Kovacs hired home depot as a general contractor for the installation of a fence at their home and residence in Olmsted Township, Ohio in 2016.  They paid Home Depot no less than $2,980 for the fence, which required a permit.  Home Depot, although registered in 2015 and 2017 in Olmsted Township, was not so licensed or registered in 2016 when acting as general contractor for the fence project.  Home Depot, as a general contract, was obligated to be licensed in Olmsted Township in 2016, and was obligated to obtain building permits, not merely to require someone else to get them on Home Depot's behalf.  Home Depot has engages in a pattern and practice of doing business as a general contractor without obtaining required licensing and registration, and without itself obtaining permits, usually by trying to delegate that duty onto its subcontractors.

4. As a result of never obtaining permits, Home Depot's work often goes uninspected. Governmental building departments do not know what to inspect because they are

unaware of the projects. Electrical, plumbing, and other significant construction is thus never performed in a code-compliant manner, and potential dangers, including electrical or plumbing dangers that could be life-threatening dangers, remain hidden and unnoticed. Thus, homeowners and consumers are not receiving the type of services, security, assurance, or protection that they would receive had their contractor been licensed, bonded, and insured, and had a permit been obtained to require inspections of work.

5. By failing to be registered or licensed, Home Depot: (a) saves money by not paying for contractor bonds required of all other general contractors; (b) avoids regulation under building and other codes; (c) avoids potential criminal and civil liability with regard to building department and code violations; and (d) unlawfully delegating responsibility that it owes its customers as a general contractor to subcontractors with whom customers have no contractual privity and generally little to no rights to pursue legally.

6. When no licensed is obtained, no permits are obtained, and no inspection is performed, making the work and consideration illegal,

7. It is otherwise illegal and deceptive for Home Depot to hold itself out as a general contractor or take money or agree to act as a general contractor or construction contractor without both obtaining permits and also required licensing, and then ensuring the licensing of its sub-trades as it represents it does. It was therefore unlawful, unjust, deceptive, and unconscionable for Home Depot to (1) agree to act as a general contractor or to have residential or other construction work performed, (2) take payment as a general contractor or construction contractor, (3) keep money paid to it for construction work or general contracting work, and (4) hold itself out as able to

4

perform general contracting work for home improvements. Home Depot must therefore be ordered to pay back to the Hidos and the Kovacs, as well as to the class which they seek to represent, all proceeds and payments received from or related to Home Depot's performing or promise to perform construction or general contracting services in areas where Home Depot failed to obtain permits or licensing to perform the work, as required by law.

8. The homeowners and businesses purchasing construction and general contracting services from Home Depot are innocent in that they do not control or know the licensing obtained by Home Depot, and they themselves are not obligated to obtain such licensing. Only Home Depot, not its customers, was obligated and charged with compliance of permit and licensing laws. It is not illegal for customers to have construction work performed for them by a company, but it is illegal for the company performing the work and taking payments to do so without proper licensing or permits. This is true across Summit County, Olmsted Township, the State of Ohio, and in other jurisdictions.

9. The Hidos and Kovacs, in addition to monetary recovery and refunds they are seeking on behalf of themselves and everyone who would be included in the definition of any class outlined herein, also seek permanent injunctive relief and declaratory relief against Home Depot in the State of Ohio and Summit County. Specifically, the Hidos and Kovacs seek a permanent injunction under the CSPA to prohibit Home Depot from engaging in any further consumer transactions involving residential construction services until such time as Home Depot becomes licensed to perform services in

relation to such consumer transaction in the relevant community, and obtains permits required by law for such services to be performed prior to their performance.

10. The Hidos and Kovacs seek certification of an Ohio-wide class of property owners, and subclasses of Ohio consumers and Summit County transaction participants.

## **THE PARTIES**

11. Plaintiffs Frances and Dennis Hido are a retired, married couple living in their primary residence at 8362 Shorthorn Drive in Sagamore Hills, Ohio.

12. Plaintiffs Joe and Brittany Kovacs are a young working couple living in their primary residence at 8625 Westfield Park Drive in Olmsted Township, Ohio, where they live with their son.

13. Defendant Home Depot is a corporation organized and existing under the laws of the State of Delaware, with its headquarters located in Atlanta, Georgia.

14. Home Depot is registered as a foreign corporation with the Ohio Secretary of State, maintains a statutory agent for the acceptance of service of process in Ohio, and regularly operates business out of numerous stores and retail locations owned by Home Depot within Ohio, including Summit County. According to Home Depot's website, it operates 70 retail locations within the State of Ohio.

15. Home Depot regularly transacts business with Ohio property owners, and revenues each year from Home Depot's Ohio transactions exceed the tens of millions of dollars.

16. Home Depot's registration with the Secretary of State states that it sought licensing from the Secretary of State only for the purposes of "[o]peration of Retail Home Improvement Stores," with no mention of performing construction services or operating as a general or other type of contractor itself.

17. At all times relevant, the Hidos dealt with Home Depot through its employees, agents, and retail location at 8211 Macedonia Commons, Macedonia, OH 44056.  The identity of subcontractors used by Home Depot was never shared with the Hidos.

18. At all times relevant, the Kovacs dealt and worked with Home Depot through its employees and agents from its retail locations, along with Home Depot's subcontractor Great Lakes Fence.

19. Great Lakes Fence, like other subcontractors, refuses to provide information concerning its business arrangement with Home Depot, its subcontracting relationship with Home Depot, and about its role and status as a subcontractor, to the Kovacs due to concerns about confidentiality clauses preventing disclosure of such information to anyone without Home Depot's approval.

20. All members of the Putative Class ("Ohio Class Members" or "Class") are Ohio property owners who purchased, whether in-store or otherwise, property improvement or property remodeling services from Home Depot where Home Depot was contracted to, agreed to, or otherwise did, act as a construction contractor or general contractor for the property owner in a location where Home Depot was not registered/licensed to do so, or even if registered, did not obtain a building permit for such improvement or remodeling work prior to commencement of work.

21. All members of the putative consumer subclass ("Ohio Consumer Subclass Members") are Ohio Class Members who purchased, whether in-store or otherwise, home improvement or home remodeling services from Home Depot for their residential property, where Home Depot was contracted to, agreed to, or otherwise did, act as a construction contractor or general contractor for the Ohio Class Member in a location

where Home Depot was not registered/licensed to do so, or even if registered, did not obtain a building permit for such improvement or remodeling work prior to commencement of work.

22. All members of the putative Summit County Consumer Subclass ("Summit County Subclass") are Ohio Class Members who purchased, whether in-store or otherwise, property improvement or property remodeling services from a Home Depot location within Summit County, Ohio, where Home Depot was contracted to, agreed to, or otherwise did, act as a construction contractor or general contractor for the property owner, without Home Depot's prior registration or licensing as a contractor, or even if registered, without obtaining a building permit for such improvement or remodeling work prior to commencement of work.

23. All members of the putative Summit County Consumer Subclass ("Ohio Consumer Subclass Members") are Ohio Consumer Subclass members who purchased, whether in-store or otherwise, home improvement or home remodeling services from a Home Depot location within Summit County, for their residential property, where Home Depot was contracted to, agreed to, or otherwise did, act as a construction contractor or general contractor without Home Depot's prior registration or licensing as a contractor, or even if registered, without obtaining a building permit for such improvement or remodeling work prior to commencement of work.

## JURISDICTION AND VENUE

24. This Court has original jurisdiction of this action under the Class Action Fairness Act. Pursuant to 28 U.S.C. § 1332(d)(2) and (6), this Court has original jurisdiction because the aggregate claims of the members exceeds $5 million, exclusive of interest and costs,

and at least one of the members of the proposed Class is a resident of a different state than Home Depot.

25. Venue is proper in the Northern District of Ohio, pursuant to 28 U.S.C. § 1391, because Home Depot is subject to personal jurisdiction there, regularly conducts business in that district through both in-store and online sales through Home Depot stores, and a substantial part of the events or omissions giving rise to the claims asserted herein occurred and continue to occur in that district.

## HOME DEPOT IS A GENERAL CONTRACTOR

26. Home Depot acts at all times as a general contractor, and did so act in its relationship with the Plaintiffs.

27. Although Home Depot attempts to delegate to its subcontractors its legal responsibility to be licensed or to obtain permits, it does not check, verify, or otherwise require proof of such licensing or permits for its various projects from its subcontractors.

28. Home Depot regularly holds itself out as, and represents itself as, a general contractor to residential homeowners looking to have work done. It states as much to its customers who seek out "Do-it-for-me" ("DIFM") help from Home Depot. It also represents itself as a general contractor on its website and in its financial filings.

29. For example, Home Depot, in its 2014 Annual Report, on Page 11 of its  Cautionary Statement Pursuant to the Private Securities Litigation Reform Act of 1995, admitted that "**[w]e act as a general contractor** to provide installation services to our DIFM customers through third-party installers. **As such, we are subject to regulatory requirements and risks applicable to general contractors, which include management of licensing, permitting** and quality of our third-party installers. We

have established processes and procedures that provide protections beyond those required by law to manage these requirements and ensure customer satisfaction with the services provided by our third-party installers. If we **fail to manage these processes effectively or to provide proper oversight** of these services, **we could suffer lost sales, fines and lawsuits**, as well as damage to our reputation, which could adversely affect our business." (emphasis added).

30. Home Depot continues to make the same representation, as found in its 2016 Annual Report, where in the same section and same page as its 2014 report, it stated "***[i]f we are unable to manage effectively our installation services business, we could suffer lost sales and be subject to fines, lawsuits and reputational damage, or the loss of our general contractor licenses.***

We act as a general contractor to provide installation services to our DIFM customers through professional third-party installers. As such, we are subject to regulatory requirements and risks applicable to general contractors, which include management of licensing, permitting and quality of work performed by our third-party installers. We have established processes and procedures to manage these requirements and ensure customer satisfaction with the services provided by our third-party installers. However, if we fail to manage these processes effectively or to provide proper oversight of these services, we could suffer lost sales, fines and lawsuits for violations of regulatory requirements, as well as for property damage or personal injury. In addition, we may suffer damage to our reputation or the loss of our general contractor licenses, which could adversely affect our business." (emphasis in original).

10

31. According to filings with the Summit County Building Department, Home Depot first became registered as a general contractor in Summit County on December 5, 2016, and such registration/licensing was issued based on a letter from Stephanie Moore, who worked for Home Depot, dated December 1, 2016.

32. In the December 1, 2016 letter, Stephanie Moore stated that "[t]his is a new license request in the name of Home Depot U.S.A. Inc.," and paid the new registration fee of $125, not the renewal registration fee of $75.

33. Home Depot, through its employees, has since made statements admitting that it had no license or registration in Summit County, Ohio for the 2015 year.

34. According to the Olmsted Township Building Department, Home Depot was registered or licensed as a general contractor in 2015, and again in 2017, but was "not registered with the Township in 2016," when it performed work as a general contractor for the Kovacs's fence project.

35. In its notarized December 2016 Contractor Registration Application for Summit County, Home Depot admitted, through its Vice President of Home Services Chuyu Xi, that it was acting as, and was applying for a license as, a "General Contractor."

**LICENSING AND PERMIT REQUIREMENTS**

36. In Summit County, as in all areas of Ohio, Home Depot was required to be first licensed or registered as a contractor before it was permitted to perform work and act as a general contractor.

37. Home Depot's subcontractors were likewise required to obtain their own licensing, and for HVAC, electrical, and plumbing subcontractors, their own permits

38. In Summit County, Summit County Ordinance § 1323.02(a) requires such licensing/registration. It states in pertinent part that "[n]o contractor shall perform any work within the County without a current Certificate of Contractor Registration from the Building Official."

39. In Summit County, as in all areas of Ohio, Home Depot was required to obtain a building permit for work it was performing as a general contractor, before work began. Additionally, electrical, plumbing, or other specialty permits had to be obtained before such subcontractor or specialty trade (electrical, plumbing, HVAC, etc.) performed work.

40. In Summit County, Summit County Ordinance § 1305.01 requires such permits to be obtained. It states in pertinent part that "[n]o building or structure shall be constructed, altered, removed or demolished . . . nor shall any equipment or fixtures be installed or altered if installation of such equipment or fixture is regulated by this Building Code, without first filing an application with the Building Official and obtaining a permit therefor."

41. In Summit County, as in all areas of Ohio, failure to obtain licensing or to obtain permits are both considered violations of the building code. Furthermore, such action is illegal, is considered criminal, and is punishable criminally.

42. In Summit County, Summit County Ordinance § 1305.04 states that "[a]ny contract made or bid submitted by a person without a permit . . . shall be null and void, and no action may be maintained and no compensation or other consideration shall be paid thereon."

12

43. In Olmsted Township, and pursuant to Section 101.05 of the Olmsted Township Zoning Ordinances, contractors are required to comply with standards and requirements of the Olmsted Township Building Department.

44. Olmsted Township Building Department and ordinances require permits and licensing/registration of all contractors, including general contractors.

45. The same requirements and legal obligations—*i.e.*, to be licensed and to obtain permits for work to be performed—exist across Ohio. Although each city, municipality, or county may have its own specific ordinance, such ordinances are common and require registration/licensing of the contractor (Home Depot), as well as permits to be obtained. These are the two issues involved in this case.

46. For example, no fewer than sixty cities and/or counties require general contractors or all contractors to register and be licensed. These locations include, but are not limited to: Cleveland, Ohio; Cincinnati, Ohio; Columbus, Ohio; Parma, Ohio; Toledo, Ohio; and nearly all other cities or municipalities with a building department. The State of Ohio maintains a list of all such governmental entities that have a building department.

47. Home Depot's failure to register as a contractor not only is illegal, but it denies homeowners the availability of an additional bond in cities requiring bonds.  While a registered subcontractor may have a bond covering its work, Home Depot's failure to register denies a second bond to the homeowners, which is a necessary and much needed protection for damage caused on any given projects.

48. The harm can be seen in various projects.  For example, Lewis and Ruth Pierotti of Westerville, Ohio (not named parties to this matter), suffered damage when Home Depot remodeled their bathroom without permits and without complying with local

building code, resulting in severe damage to their home with little to no assistance from their local building department due to the lack of any permits pulled by Home Depot. In order to protect consumers like Pierottis and others who might have the same issues in the future.  That is why customers like the Hidos and Kocavs are needed to bring this class action suit and isolate the legal root cause of Home Depot's shoddy work— its refusal to be held responsible for permitting or licensing of its own work and itself.

49. As a direct and proximate result of this conduct by Home Depot, the Kovacs, Hidos, and others have suffered and continue to suffer harm this continued violation of their statutory consumer rights, building codes intended to protect them, and the enjoyment of their homes, among other harm suffered as outlined herein.

## HOME DEPOT'S SYSTEMIC BREACH OF CONTRACT, MISREPRESENTATION, ILLEGAL, AND UNJUST CONDUCT

50. Home Depot systemically breaches its contracts with Ohio property owners when it performs work for them or causes work to be performed by subcontractors, or takes money as payment for the work, in jurisdictions where Home Depot is or was not a licensed or registered contractor, or where Home Depot never obtains permits.

51. Home Depot advertises that it uses only "Licensed & Insured Professionals" to work on projects.

52. Home Depot, in fine print located on some Home Services advertisements, states that "[a]ll installation services provided by insured, licensed (where applicable) and background screened independent contractor" that are "Home Depot authorized."

53. According to the same advertisements, licenses "held by or on behalf of Home Depot U.S.A., Inc. [are] available at homedepot.com/licensenumbers."

54. As of March 2015, according to Home Depot's website, Home Depot was licensed in the following Ohio jurisdictions: "Cincinnati CBRC004473, Cleveland CR14025305, Cleveland Heights 3897, Columbus G6052, Lakewood 1000003993, Medina 15-021, Shaker Heights 7223, Avon Park 24054, Ashland CR15-027."  Home Depot was no licensed in Summit County.

55. Home Depot also listed a state-wide licensing number for the State of Ohio on its website in 2015.  That number, "46992," is not a licensing number for any state-wide construction-related license through the Ohio Construction Industry Licensing Board, and does not appear to be an actual state-wide licensing number as Home Depot advertised it to be, nor is it the business license number of Home Depot.

56. Home Depot generates written contracts for each customer for whom Home Depot acts as a general contractor, and in doing so, Home Depot uses much of the same, standard, pre-printed language in its written agreements. This language includes, but is not limited to, the following:

   a. Specific exclusions for skylight installation, alterations to home exteriors, removal of vinyl flooring, and venting in wall, but no exclusion of permits, licensing, or registration;

   b. The warranty and promise that "ALL WORK WILL BE DONE TO LOCAL CODES AND ORDINANCES."

57. Regardless of whether permit, licensing, or registration requirements are written into a contract, they are legal requirement implied by law.

58. Home Depot routinely and regularly does not comply with its written contractual promise that all work will be done in compliance with local codes and ordinances. This

15

is especially true in jurisdictions where Home Depot is or was not registered or licensed, and is true across Ohio as Home Depot routinely and customarily refuses and fails to obtain permits for its work, even when registered.

59. Based on the representations of Home Depot, when customers of Home Depot contract with and pay Home Depot, they believe that the work was or will be performed by a licensed, bonded, contractor, pursuant to a permit, and that permit costs and licensing costs are worked into the overall cost of the project. Customers are also lead to believe that the work was or will be properly performed and has been inspected by the relevant building department.

## TRANSACTION(S) WITH THE HIDOS

60. Home Depot specifically held itself out to the Hidos, through its agents at a Summit County Home Depot store, as a general contractor who was capable and able to perform kitchen remodeling services, including carpentry, cabinet, drywall, electrical, and other work requiring a permit, for the Hidos' project.

61. The Hidos, based on representations from Home Depot, agreed to hire Home Depot to perform this work. True and accurate copies of some of the contract documents are attached hereto as Exhibit 1. Home Depot is in possession of the other documents and all contract documents, as well.

62. At all times relevant, when Home Depot took tens of thousands of dollars as payment from the Hidos, when it contracted with the Hidos, and when it had the work performed at the Hidos' home, Home Depot was acting as a general contractor.

63. At all times relevant, when Home Depot was acting as a general contractor, it was not licensed or registered as a general contractor as required by law in Summit County.

16

64. Neither Home Depot nor its subcontractors ever obtained permits for the work performed for the Hidos.

65. The work Home Depot and/or its subcontractors performed would have required permits, specifically for electrical work, installation of new lights and electrical wiring, drywall removal, ceiling installation, tiling, and other work. At a minimum, both a building permit and also an electrical permit were required but never obtained.

66. The Hidos fully paid Home Depot, never knowing that Home Depot failed to obtain permits or licensing to be able to legally perform the work that the Hidos believed Home Depot would perform as promised and represented.

67. This is typical of the manner, pattern and practice of Home Depot's transactions with its customers.

68. At some point, after Home Depot concluded its project with the Hidos, it is believed that Home Depot became registered, but that was not until over a year later, in December of 2016.

69. Home Depot and its agents had knowledge of all legal requirements, as they stated they investigated code requirements and were not required to be licensed when the Hido work was performed, but that they were required to become licensed for 2017. Home Depot agents and employees have made statements to media evidencing this knowledge.

70. Although Home Depot had multiple subcontractors work on the Hidos' home, they misrepresented to the media and the Hidos that only one subcontractor was used, and that the subcontractor was in fact licensed.

## **TRANSACTION WITH THE KOVACS**

71. Home Depot specifically held itself out to the Kovacs, through its agents in a Home Depot department store and at the home of the Kovacs, as a general contractor who was capable and able to perform fence installations services for the Kovacs's fence installation project at their home in Olmsted Township, Ohio.

72. The Kovacs, based on representations from Home Depot and/or its agents, agreed to hire Home Depot to perform this work. True and accurate copies of some of the contract documents are attached hereto as Exhibit 2.  The contract was entered into in 2016. Home Depot is in possession of the other documents and all contract documents, as well.

73. Home Depot had initially informed the Kovacs and agreed with the Kovacs to sell them a shadow-box style fence, which is what the Kovacs expected to receive, and what was allowed by their home owner association.

74. The Home Depot, due to a lack of oversight over, management of, communication with, and policies regarding, its subcontractors, caused its contract to be changed at the last minute, changing the style of fence to what is known as a "privacy fence," without informing the Kovacs to this change before Joe Kovacs signed the contract.

75. At all times relevant herein, when Home Depot took full payment of $2,980 dollars as payment from the Kovacs, when it contracted with the Kovacs, and when it had the work performed at the Kovacs's home, Home Depot was acting as a general contractor.

76. At all times relevant herein, when Home Depot was acting as a general contractor, it was not licensed or registered as a general contractor as required by law in Olmsted Township.

77. Fence installation, specifically the fence installed by Home Depot for the Kovacs, requires a permit.

78. Home Depot itself never obtained a permit in its name for the construction of the fence, and instead pushed that responsibility off onto its subcontractor.

79. The Kovacs fully paid Home Depot, never knowing that Home Depot was not licensed or registered, and never knowing that Home Depot itself never obtained a permit.

80. Problems arose after the Kovacs' fence was installed with the style, which was not what had been previously negotiated by the Kovacs and Home Depot as the fence was not approved by the Home Owner Association.

81. The subcontractor refused to respond to inquiries from Kovacs via counsel concerning its relationship and responsibilities as a subcontractor to Home Depot for this project, claiming that Home Depot has a confidentiality clause with its subcontractor agreements that prevent the subcontractors from discussing matters with anyone, including the homeowners or their agents.

82. This is typical of the manner, custom, pattern and practice of Home Depot's transactions with its home remodeling customers.

### CLASS TREATMENT AND FACTS

83. The Class, for purposes of the breach of contract, unjust enrichment, and other state-wide claims, should be defined as:

   a. All Ohio property owners who purchased, whether in-store or otherwise, improvement, repair, or remodeling services ("Work") from Home Depot, to be performed at real property owned by the property owners, in a jurisdiction where Home Depot was required to, but was not at the time, registered and/or

19

licensed to act as a general contractor or contractor, or where Home Depot, whether registered/licensed or not, did not obtain required permits for such Work prior to commencement of the Work.

84. Additional subclasses may be defined for purposes of some claims in this Complaint. For claims under the CSPA and R.C. 4722.01 *et seq.*, an Ohio Consumer Subclass is defined as:

> b.  All members of the Class who own residential property and purchased Work from Home Depot to be performed on their residential property.

85. For claims under the Summit County Consumer Protection Ordinance, a Summit County Consumer Subclass is defined as:

> c.  All members of the Ohio Consumer Subclass who transacted with Home Depot at a location within Summit County, Ohio, for Work to be performed on their residential property.

86. The Class should be certified and each Class member compensated by being refunded or restored the money they paid to Home Depot, as if the transaction did not occur.

87. The Ohio Consumer Subclass and Summit County Consumer Subclass should also be awarded injunctive relief for their respective claims, such that Home Depot is prohibited from engaging in transactions or contracts with consumers for home improvement, repair, construction or remodeling services in any jurisdiction where Home Depot is or was not licensed and/or registered as a contractor or general contractor, and prohibiting Home Depot from performing Work unless and until Home Depot obtains required building permits.

*NUMEROSITY*

88. Each Class member has been damaged in a real amount, but many are unaware due to the concealment and misrepresentation of Home Depot. Furthermore, injunctive relief is appropriate and could be sought by every Class member who belongs to one of the two consumer subclasses. As such, various cases would subject consumers and Home Depot to the possibility of inconsistent outcomes in different courts, and individual actions are impracticable.

89. There are potentially hundreds if not thousands of Home Depot customers who purchased improvements, repairs, and remodeling services over the course of a single year.

90. Even if Home Depot had just one customer at each of its Ohio locations that had these issues or fall within the class definition, that is 70 different potential members, and realistically, certain stores routinely do this type of work, so much so that Home Depot is able to keep many independent contractors for each of its stores working as subcontractors throughout the year—some only working on Home Depot projects and none from another source or general contractor.

91. Joinder is nearly impossible with this potential number of Class members, and it is certainly impractical.

92. When considering the potential size of the Class over a number of years, the potential members become much larger in number.

### *COMMONALITY AND TYPICALITY*

93. Each Class member has been damaged, and is entitled to relief, by the same conduct and in the same way: Home Depot's failure to obtain legally mandated licensing and/or registration, or failure to apply for permits.

94. There are common questions of fact and law that predominate across the Class, including: (1) the formation and terms of the standardized contract used by Home Depot state-wide for its general contractor program; (2) Whether Home Depot misrepresented to Class members that it would comply with all local codes and ordinances; (3) whether Home Depot breached its contract with its customers; (4) whether Home Depot was unjustly enriched by being paid for Work; (5) whether the proceeds of the illegality of Home Depot's conduct should be disgorged; (6) whether Class members are entitled to injunctive relief sought; (7) whether Class members have sustained damages; and (8) what the proper measure of Class member damages would be, among others.

95. Home Depot's labor terms and conditions are identical among all customers, including the promises made to comply with local ordinances and codes.

96. The local codes and ordinances require the same thing: registration and/or licensing, and that permits be obtained.

97. The Ohio and Summit County consumer protection laws would provide the same remedies and identical rights to the subclass members.

98. Because Home Depot's conduct is uniform across its stores in Ohio, there are issues that are common across the Class. The common questions of fact and law will have common answers throughout the Class.

99. It is the same conduct: failure to obtain legally mandated license and registration, and failure to obtain legally mandated permits, despite representation that such would be done, that are alleged to give rise to the violations and liability under the CSPA, R.C. 4722.01 *et seq.*, and/or the Summit County Consumer Ordinance.

100.    For these same reasons, the defenses will be common across the Class.

101.    The Plaintiffs have the same claims and rights as the Class members, and their claims are typical of the Class and potential subclasses.

102.    Common proof of the contract, its terms, and its breach, and Home Depot's pattern and practice of never obtaining permits or timely registering as a General Contractor are applicable to the Plaintiffs and the Class.

### *ADEQUACY*

103.    Plaintiffs are intelligent, retired and have time to litigate this matter, understand the claims, are able to represent the interests of the Class, and their interest are aligned with that of the Class. The interest of the Plaintiffs is not antagonistic to the Class.

104.    The Plaintiffs are part of the Class, owning real property, specifically homes, where they purchased and paid for home improvement, repair, and remodeling services from Home Depot in a location in which Home Depot was not registered or licensed to perform such work or be paid for such work, and where Home Depot failed to obtain its own permits for such work. Therefore, Plaintiffs possess the same interest and suffer the same injury as Class members (recovery of moneys paid via restitution or disgorgement).

105.    Plaintiffs have chosen attorneys who are experienced in breach of contract, unjust enrichment, construction claims, class actions, complex litigation, and consumer

claims. Myers Law, LLC and its Attorneys Dan Myers and Samantha Vajskop have handled complex civil litigation matters in Ohio. Dan Myers was approved as class co-counsel in the nation-wide class action *Brandewie v. Wal-Mart Stores, Inc.* by Judge Gwin of the Northern District of Ohio. The attorneys at Myers Law teach CLEs for other attorneys, regularly lecture on consumer law matters, and are referred matters from firms, large and small, across the State of Ohio due to their success, knowledge, and experience in consumer matters such as this. Condeni Law adds decades of experiences trial counsel work through the involvement of attorney Joseph Condeni, as well as substantial financial support for the class action claim. Counsel and the Class representatives will adequately and diligently pursue the interests of the Class.

### *PREDOMINANCE*

106.    Issues subject to generalized proof and applicable to the Class as a whole predominate over issues that are subject to only individualized proof.

107.    The common questions of law and fact described above are the most significant questions for the class action, the resolution of which will resolve the claims other than calculated damages for each Class member.

108.    Damages for Class members will be easily calculated through formulas, *i.e.*, adding the amount of money paid by property owners, or multiplying that number by the percentage of money retained by Home Depot on its projects, etc.

109.    For consumer matters, the same calculation is used, but only in relation to land zoned as residential as opposed to commercial, or, for Summit County, property with particular zip codes, all available through Home Depot's computer and record retention systems.

110.   There are no individualized inquiries required for the claims or defenses.

*SUPERIORITY*

111.   A class action is the superior method of resolving this dispute.

112.   Plaintiffs allege a single course of wrongful conduct by Home Depot, which gives rise to multiple claims, making this case particularly well-suited to class certification.

113.   There are no individual inquiries required of Class members under the breach of contract, unjust enrichment, CSPA, R.C. 4722.01, or Summit County Consumer Protection Ordinance.

114.   Home Depot's sales systems provide an efficient way to obtain information on transactions at one time in one place, meaning Class treatment could significantly reduce the discovery costs to all parties.

115.   Given the concealed nature of the illegality and wrongful conduct, it is not likely nor feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages which may give rise to competing and conflicting liabilities and judgments. Therefore, aggrieved persons will be without any effective redress unless they may employ the class-action device.

116.   Given the unlikelihood that many injured Class members will discover, let alone attempt to vindicate their claims, class action is a superior method of resolving the claims.

117.   No other class actions of this nature are pending against this Defendant in Ohio to Plaintiffs' knowledge.

118.   There are no parallel pending individual actions to Plaintiffs' knowledge.

**COUNT ONE**
**BREACH OF CONTRACT – ILLEGALITY – RESTITUTION**
**(Entire Class and Ohio Class Members)**

119.    Plaintiffs incorporate all other paragraphs of this Complaint as if fully rewritten herein.

120.    Plaintiffs had a contract with Home Depot under which they would pay for certain property improvements, repairs, and remodeling services, and Home Depot would provide those services in compliance with local codes and ordinances.

121.    The Plaintiffs fully paid for and performed their obligations under their contract, and in fact they and all Class members overpaid for the work based on Home Depot's failure to obtain legally-required licensing, registration, and/or permits to perform the work, which made the contract illegal.

122.    Home Depot breached their representation and promise to the Plaintiffs and its agreement with them by failing to ensure that permits were obtained by specialty trades, or that subcontractors were licensed or registered to perform work.

123.    Home Depot also breached their representations and promise to the Plaintiffs, and have and had a pattern and practice of breaching those promises to all Class members, as Home Depot either (1) was not registered and/or licensed as a general contractor, thus violating local ordinance and code, and/or (2) failed to obtain a required building permit in its own name, thus violating local ordinance and code.

124.    In the case of the Hidos, where no permit was obtained, failing to obtain permits for the work means that no inspections are performed, which means there are no guarantees work is performed correctly, safely, and in every case, work is in violation of building code and local ordinances and code.

125. Home Depot's breach of contract is illegal. It is illegal for it to accept payments and perform work without required licenses or permits. As such, consideration paid by customers and Class members, including the Kovacs and Hidos, has been paid for illegal work.

126. The Hidos and Kovacs, and other customers that are Class members do not know that the work is illegal. They are not obligated to obtain permits or licensing—Home Depot is obligated to obtain permits and licensing. The law places the duty on Home Depot, not customers. In fact, it would be wrong for customers to obtain permits for work unless the customers themselves were performing the work, which they are not.

127. Because money is paid and kept by Home Depot for its illegal conduct, because Home Depot deceives its customers about its licensing, registration, permits, and overseeing of the permit process, and because the law places legal constraints on Home Depot, not its customers, Home Depot is the morally and legally culpable party, and the customers are innocent of any wrongdoing, as the laws are there to protect customers' health, safety, and property.  Additionally, there is no legal duty on the customer to obtain registration or permits unless the customer is performing the work by himself/herself without Home Depot's involvement.

128. As a direct and proximate result of this illegal conduct by Home Depot, and based on the innocence of the customers and the Kovacs and Hidos, the money paid to Home Depot must be restored to its customers and disgorged from Home Depot. There is no value to illegally performed work, as there is no governmental assurance that the work was performed properly or in a safe manner such that Ohio residents occupying properties will be safe.

**COUNT TWO**
**UNJUST ENRICHMENT**
(*Entire Class and Ohio Class Members*)

129.   Plaintiffs incorporate the foregoing allegations as if fully re-stated and re-alleged herein, except where those claims are inconsistent with the quasi-contract theory of recovery for unjust enrichment.

130.   Home Depot received money, compensation, and value from the Kovacs and Hidos and all Ohio Class Members, who paid those monies to Home Depot due to Home Depot's demand for payment and representation that it would perform work in accordance with local codes and ordinances, and based upon the belief that Home Depot would and could perform such work.

131.   It was illegal for Home Depot to demand, receive, or take such monies or payments form Ohio Class Members and the Kovacs and Hidos specifically, as it was in violation of local code, ordinance, or law.

132.   Home Depot's receipt and maintenance of such payments from the Kovacs and Hidos and Ohio Class Members pursuant to this illegal demand for payment has unjustly enriched Home Depot in the amount that Home Depot was paid, or alternatively, in the amount kept or retained by Home Depot from its customers.

133.   Because Home Depot's claim for payment and acceptance of payment was unlawful and invalid, Home Depot's collection of payments was unjust, illegal, wrongful, and such collected amounts must be disgorged and paid back to the Plaintiffs and the Ohio Class Members in order to avoid an unjust result.

134.    Plaintiffs and Ohio Class Members are entitled to restitution from Home Depot for those amounts paid in equity and at law, and this Court is entitled to order the repayment of said amounts.

**COUNT THREE**
**VIOLATIONS OF THE CSPA, R.C. 1345.01 *et seq.***
(*Ohio Consumer Subclass Members*)

135.    Plaintiffs incorporate the foregoing allegations as if fully re-stated and re-alleged herein.

136.    The Kovacs and Hidos are each a "consumer" as that term is defined in R.C. 1345.01(D) because they were persons who purchased home improvement and home remodeling services and goods for their primary residence from Home Depot for personal, family, and household purposes.

137.    Home Depot is a "supplier" as that term is defined in R.C. 1345.01(C) because it is a person that sold and is in the business of selling and effecting or soliciting sales of home improvement and home remodeling services and goods to the Kovacs and Hidos, as well as many other Ohio residential property owners, for the property owners' personal, family, or household uses.

138.    The transaction(s) between the Kovacs and Home Depot or the Hidos and Home Depot were each a "consumer transaction" as that term is defined in R.C. 1345.01(A) because they involved the sale of services and goods, specifically home improvement and home remodeling services and goods, to consumers.

139.    The transaction between Home Depot and the Hidos, or Home Depot and the Kovacs, is not excluded from the definition of "consumer transaction" because the contracts between Home Depot and its customers are not "home construction service

contract[s]" as defined in R.C. 4722.01. Specifically, Home Depot does not construct residential buildings or separate ancillary structures, but only provides rehabilitation and remodeling services, which were specifically excluded from the exception to CSPA applicability when the Ohio General Assembly deleted such language (included in the original bill) from the final effective version of R.C. 4722.01's definitions.

140.    The transaction between Home Depot and the Kovacs is for less than $25,000.

141.    Home Depot has committed acts and engaged in conduct which is deceptive, unconscionable, or unfair under the CSPA, as outlined herein.

142.    The act or practice of performing home improvement services or providing home improvement goods without required contractor's license is an unfair and deceptive act or practice prohibited by the Consumer Sales Practices Act, R.C. 1345.02, and courts within the State of Ohio have held so. Such holdings have been published through numerous cases in the Ohio Attorney General Public Inspection File ("PIF") since 1982. *See, e.g., State ex rel. Brown v. Martz*, Butler County Case No. CV-81-1152, OPIF # 10000441, at pg. 1 (filed in PIF May 27, 1982); *State ex rel. Celebrezze v. Tieman*, Fanklin County Case No. 89CV075122, OPIF # 10001257, at pg. 9, ¶ 10 (filed in OPIF May 30, 1991). There are other similar cases with the same holding in the PIF.

143.    The Ohio General Assembly has agreed that such conduct violates the CSPA, and as such, although unnecessary, they have added the same requirement expressly into R.C. 1345.02(G), by stating that "the failure of a supplier to obtain or maintain any registration, license, bond, or insurance required by state law or local ordinance for the supplier to engage in the supplier's trade or profession is an unfair or deceptive act or

practice." This change to the statute occurred in 2017, but is redundant because case holdings in the PIF already stated the same and were actionable under R.C. 1345.09(B).

144.     Home Depot materially misstates the estimated cost of completion of its work, because it is not allowed to charge for this work legally, in violation of the Ohio Administrative Code ("OAC") 109:4-3-05(D)(11). In the case of the Hidos, it was misstated by tens of thousands of dollars, and for the Kovacs, thousands of dollars.

145.     Home Depot failed to provide customers, including the Hidos and Kovacs, with a written itemized list of repairs and materials which specifically identifies the individuals performing the repair or service, *i.e.*, their subcontractors, in violation of OAC 109:4-3-05(D)(12). This is important because knowledge of subcontractors and their identity would assist owners, including the Hidos and Kovacs, in knowing who was being paid for the work, and to know the reasonable value for work performed prior to agreeing to hire Home Depot.

146.     Home Depot knowingly breached its agreement and contract with its customers, and specifically with the Hidos and Kovacs, by failing to fulfill their duties under local codes and ordinances as promised with knowledge that they were required to and failed to obtain permits or licensing, among other things. This is a deceptive, unfair, or unconscionable act under the CSPA as held by multiple cases in the PIF. *See, e.g., Williams v. The Kitchen Connection*, Lorain Muni. Ct. Case No. 2011CVE02417, PIF # 10003005 (in PIF since May 18, 2012). There are multiple similar cases that were in the PIF well before 2012.

147.     Home Depot made a representation, claim, and assertion of fact that it could perform the work it promised to perform for its customers, including the Kovacs and

Hidos, and that such work would be done in accordance with local codes and ordinances, by licensed contractors.  Furthermore, Home Depot advertised, falsely, on its website that it had a state-wide license number that it did not have at the time. Those claims made in sales presentations and in writing were false and Home Depot had no reasonable basis in fact to believe it was true—Home Depot knew it was not registered, and knew that it later would not and did not obtain permits. Such conduct violates OAC 109:4-3-10(A).

148.    Home Depot never provided the promised services to any of its customers, including the Kovacs and Hidos, namely services that would comply with local codes and ordinances. Home Depot subsequently allowed more than eight weeks to pass for the Kovacs and Hidos, and all Ohio Consumer Class Members, without making a full refund, delivering the promised services, furnishing a good faith substitute, or offering to make a refund, in violations of OAC 109:4-3-09(A)(2).

149.    Home Depot has committed other unconscionable, unfair, and deceptive acts as outlined in the PIF or OAC, as well.

150.    Home Depot at all times acted with knowledge that it was acting as a general contractor, that it was not licensed or registered, that it was required to be licensed or registered, and that it was not, and did not obtain permits.

151.    Home Depot did not maintain or establish policies or procedures used to avoid the violations outlined above.

152.    Home Depot intentionally, knowingly, and purposefully committed the above violations of the CSPA.

153.    As a direct and proximate result of the unfair, deceptive, and/or unconscionable conduct outlined above, Home Depot caused the Kovacs and Hidos and Ohio Consumer Class Members to suffer damages and harm, including but not limited to the loss of money paid to Home Depot by those persons, the amounts paid as deposits, and the total amounts paid to Home Depot.

154.    Even though Home Depot has begun to obtain licensing in some locations, it still refuses and fails to obtain permits for each of its projects, fails to ensure that permits are obtained, and therefore continues to mislead, misinform, and commit all of the above violations with its customers, and such violations and conduct are likely to continue into the future.

155.    Such harm caused by this conduct cannot simply be resolved with money or damages alone. As such, injunctive relief is necessary to protect Ohio Consumer Class Members, present and future, from such illegal and dangerous conduct.

156.    Under the CSPA, consumers are allowed to file a matter as a class action if the violations alleged are violations of a case holding published in the PIF, or a violation of an OAC provision, which includes all of the above claimed violations.

**COUNT FOUR**
**VIOLATIONS OF R.C. 4722.01 *et seq.***
***(Ohio Consumer Subclass Members)***

157.    This count is made in the alternative to Count Three on behalf of the Hidos, as the two are mutually exclusive after a transaction occurs between a customer and Home Depot.

158.    Plaintiffs incorporate the foregoing allegations as if fully re-stated and re-alleged herein, except for the allegations that are mutually exclusive with those in Count Three.

33

159.    The Hidos are each an "owner" as that term is defined in R.C. 4722.01(E) because they both contracted with Home Depot and they are owners of their residence where the work was performed.

160.    Home Depot is a "home construction service supplier" as that term is defined in R.C. 4722.01(D) because it has a general liability insurance policy of at least $250,000 and contracted with the Hidos to construct a residential building.

161.    Home Depot violated the Home Construction Service Suppliers Act by failing to provide a full refund within a reasonable period of time to the Hidos or any of its other customers for services that it failed to deliver in accordance with the contract, namely all services provided because they were not in compliance with local codes and ordinances.

162.    Home Depot intentionally misstated the estimated cost of the home construction services is provided.

163.    Home Depot intentionally misrepresented aspects of the transaction, *i.e.*, that work would be done in accordance with local codes and ordinances, and by doing so also misrepresented the nature and quality of the work.

164.    As a direct and proximate result of this conduct, Home Depot has caused the Hidos and all Ohio Consumer Class Members to suffer damages and harm, specifically the loss of the money that they paid to Home Depot, which in fact was a significant overpayment to Home Depot. Furthermore, Hidos and the Ohio Consumer Class Members are entitled to an injunction against this behavior and conduct under R.C. 4722.08(C).

## COUNT FIVE
## VIOLATIONS OF THE SUMMIT COUNTY CONSUMER PROTECTION ORDINANCE
### *(Summit County Consumer Subclass)*

165.    Plaintiffs incorporate the foregoing allegations as if fully re-stated and re-alleged herein.

166.    Summit County's consumer protection ordinance applies to all consumer transactions that take place in Summit County, regardless of the residence of any person affected by the transaction pursuant to Summit County Cod. Ord. § 761.01.

167.    It need not be shown that consumers were actually harmed or damaged for a cause of action to exist under the Summit County Consumer Protection Ordinance, as outlined in Summit County Cod. Ord. § 761.04(a).

168.    Pursuant to Summit County Cod. Ord. § 761.04(b) and (c), a person aggrieved by a violation of the Summit County Consumer Protection Ordinance has a cause of action against the company committing the violation, and may recover injunctive relief, compensatory damages which are subject to trebling, punitive damages, and other relief deemed appropriate. Attorney fees may also be awarded.

169.    The remedies available under Summit County Cod. Ord. § 761.04 are in addition to remedies under other local, state, and federal laws related to the same conduct, and therefore are cumulative with those remedies available under the CSPA and/or R.C. 4722.01 *et seq.*

170.    The Hidos and the Summit County Consumer subclass members are "consumer[s]" as that is defined in Summit County Cod. Ord. § 759.02(c) because they are persons who sought and acquired services for primarily personal, family, or household purposes.

171.   Home Depot is a "Merchant" as that term is defined in Summit County Cod. Ord. § 759.02(g), because Home Depot is regularly engaged in the business of selling home improvement services like those to the Hidos, and regularly deals in selling those services.

172.   Home Depot used untrue and misleading advertising when it advertised to the Hidos and Summit County Consumer subclass members, in its sales presentation, and in its written estimates or agreements, that it (a) could perform the work promised, (b) would perform work in compliance with local codes and ordinances, and (c) that required permits would be obtained. These statements and representations were false, deceptive, misleading, and untrue.

173.   This misleading advertising was made with the intent to sell the home improvement services offered for sale by Home Depot.

174.   Such untrue advertising is a violation of Summit County Cod. Ord. § 763.01, which in turn is a violation of Summit County Cod. Ord. § 761.04.

175.   Home Depot committed and engaged in unconscionable consumer sales practices under Summit County Cod. Ord. § 201.01(h) because it unfairly took advantage of consumers like the Hidos and their lack of knowledge as to Home Depot's registration and licensing, in a way that resulted in gross disparity between the amounts paid by Hidos and others, and the value received ($0).

176.   Home Depot committed and engaged in unfair or deceptive consumer sales practices in relation to the Hidos and others, as defined by Summit County Cod. Ord. § 201.01(i), by representing that the subject of the consumer transaction, the home improvement services, had the approval, standard, characteristics, and benefits that it

did not have—namely that it was performed in accordance with local ordinances and codes when such was not the case.

177.   As a direct and proximate result of these unfair, deceptive, unconscionable acts by Home Depot, Hidos and others suffered damages, including the moneys overpaid to Home Depot, moneys paid to Home Depot, and other harm and damages.

178.   At all times, Home Depot acted with knowledge and intent as outlined in the relevant code sections, and as evidenced by Home Depot's admissions in its financial disclosures and subsequent registration.

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, hereby request the following relief from this Court:

d.   An order certifying the class and any relevant subclasses as a damages class, as well as an injunctive class, and appointing Plaintiffs and their counsel of record to represent the proposed class and subclasses;

e.   Issue a restitution order in favor of Plaintiffs and the proposed class and subclasses, requiring Home Depot to repay all amounts collected by it for property improvement, repair, or remodeling projects that either required a permit or registration where Home Depot lacked either;

f.   Judgment in favor of the Plaintiffs and the proposed class and subclasses, and against Home Depot, in an amount of the actual damages (restitution/disgorgement) for Plaintiffs and the proposed class;

g.   An order/declaration/finding that all obligations owed by Ohio Class Members to Home Depot are null and void;

h.  In relation to the Plaintiffs and Ohio Consumer subclass, judgment in their favor including injunctive relief, and all remedies available to them under R.C. 1345.09 and/or R.C. 4722.08;

i.  In relation to the Plaintiffs and Summit County Consumer subclass, judgment in their favor including injunctive relief, compensatory damages, treble compensatory damages, punitive damages, and all other remedies available under Summit County Cod. Ord. § 761.04;

j.  An order awarding attorneys' fees and costs of suit;

k.  Pre-judgment and post-judgment interest; and

l.  Such other and further relief as the Court deems just and proper.

m.  If the Court does not certify a class, but permits claims to continue individually, then Plaintiffs are entitled to non-economic damages and treble actual economic damages, statutory damages, and other relief under R.C. 1345.09(B), as well as R.C. 4722.01 *et seq.*

Respectfully submitted,

*/s/ Daniel J. Myers*　　　　　　　　　　
Daniel J. Myers, Esq. (0087909)
Samantha A. Vajskop, Esq. (0087837)
MYERS LAW, LLC
600 East Granger Road, Second Floor
Cleveland, Ohio  44131
(216) 236-8202 (phone) / (216) 674-1696 (fax)
DMyers@MyersLawLLC.com
SVajskop@MyersLawLLC.com
CO-COUNSEL FOR PLAINTIFFS

*/s/ J. A. Condeni*　　　　　　　　　　　
JOSEPH A. CONDENI (0030275)
*CONDENI LAW LLC*
600 E. Granger Rd., Second Floor
Cleveland, Ohio 44131
Telephone: (216) 771-1760
Fax: (216) 771-3387
joe@condenilaw.com
CO-COUNSEL FOR PLAINTIFFS

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and accurate copy of the foregoing was

served on counsel for all parties via the Court's e-filing system on this July 31, 2017.

*/s/ Daniel J. Myers*
Daniel J. Myers, Esq. (0087909)