IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| FRANCES HIDO, DENNIS HIDO, JOE KOVACS, and BRITTANY KOVACS, on behalf of themselves and all others similarly situated,<br><br>     Plaintiffs,<br>v.<br><br>HOME DEPOT U.S.A., INC.<br><br>     Defendant. | Case No. 5:17-cv-01116-BYP<br><br>JUDGE BENITA Y. PEARSON<br><br><br>**DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT AND SUPPORTING MEMORANDUM** |

# TABLE OF CONTENTS

I.    Introduction ....................................................................................................1

II.   Factual Allegations .........................................................................................1

III.  Argument .........................................................................................................5

    A.    Plaintiffs' Claims Fail Because They Are Based on Purported
         Violations of Local Ordinances That Do Not Apply .............................5

         1.    The Kovacs' Fence Installation Was Properly Permitted ..............6

         2.    The Hidos' Cabinet Installation Did Not Require a Permit .............7

         3.    The Ordinances Requiring Contractor Licenses Do Not Apply
              to Contractors Like Home Depot Who Do Not Actually
              Perform Work In the Jurisdiction...................................................9

    B.    All of Plaintiffs' Claims Fail Because They Are An Attempted End-
         Run Around the Lack Of A Private Right of Action ...........................11

    C.    Plaintiffs' Claims Also Fail for Independent Reasons .......................12

         1.    Breach of Contract – Illegality – Restitution...............................12

         2.    Unjust Enrichment.......................................................................14

         3.    Consumer Sales Practices Act......................................................15

         4.    Home Construction Service Suppliers Act ...................................18

         5.    Summit County Consumer Protection Ordinance..........................19

IV.   Conclusion .....................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Family Ins. v. Hoop*,
    No. 13CA983, 2014 WL 4292827 (Ohio Ct. App. Aug. 26, 2014)........................................13

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).................................................................................................................5

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007).................................................................................................................5

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013).................................................................................................................5

*Crull v. Maple Park Body Shop*,
    521 N.E.2d 1099 (Ohio Ct. App. 1987)................................................................................12

*Dobrski v. Ford Motor Co.*,
    698 F. Supp. 2d 966 (N.D. Ohio 2010)........................................................................2, 3, 17

*Felix v. Ganley Chevrolet, Inc.*,
    49 N.E. 3d 1224 (Ohio 2015) ...............................................................................................17

*Goodman v. Cisco Sys., Inc.*,
    148 F. App'x 378 (6th Cir. 2005) ........................................................................................15

*Hambleton v. R.G. Barry Corp.*,
    465 N.E.2d 1298 (Ohio 1984) ..............................................................................................15

*Leichtman v. WLW Jacor Commc'ns, Inc.*,
    634 N.E.2d 697 (Oh. Ct. App. 1994) ...................................................................................11

*Long v. State Farm Ins.*,
    No. 2:13-CV-786, 2014 WL 12654134 (S.D. Ohio June 3, 2014) ........................................14

*Marlowe v. Nature's Bounty Co.*,
    No. 1:17CV332, 2017 WL 2291683 (N.D. Ohio May 25, 2017).............................................15

*McCabe/Marra Co. v. Dover*,
    652 N.E.2d 236 (Ohio Ct. App. 1995)..................................................................................13

*Nelson v. Pieratt*,
    No. CA2011-02-011, 2012 WL 2088635 (Ohio Ct. App. June 11, 2012)..............................16

iii

*In re Porsche Cars N. Am., Inc.*,
   880 F. Supp. 2d 801 (S.D. Ohio 2012) ...........................................................15, 17

*Randolph v. New England Mut. Life Ins. Co.*,
   526 F.2d 1383 (6th Cir. 1975) .........................................................................14

*Res. Title Agency, Inc. v. Morreale Real Estate Servs., Inc.*,
   314 F. Supp. 2d 763 (N.D. Ohio 2004)............................................................13

*Save the Lake v. Hillsboro*,
   815 N.E.2d 706 (Ohio Ct. App. 2004)..............................................................11

*Schneider v. Kumpf*,
   58 N.E.3d 1220 (Ohio Ct. App. 2016) ..............................................................12

*Spokeo, Inc. v. Robins*,
   136 S. Ct. 1540 (2016).......................................................................................5

*Wolfer Enter., Inc. v. Overbrook Dev. Corp.*,
   724 N.E.2d 1251 (Ohio Ct. App. 1999) ............................................................14

*Yonut v. Salemi*,
   No. 05AP-1094, 2006 WL 1495068 (Ohio Ct. App. June 1, 2006) ...................12

**Statutes, Regulations, and Ordinances**

R.C. § 1345.01 .................................................................................................4

R.C. § 4722.01 ..............................................................................................4, 18

R.C. § 4722.03 .................................................................................................18

R.C. § 4722.08 .................................................................................................19

Ohio Admin. Code § 4101:8-102.10.................................................................8, 9

Ohio Admin. Code § 4101:8-102.11................................................................11, 12

Ohio Admin. Code § 4101:8-104.2.1.................................................................12

Olmsted Township Building Code § 1301.08......................................................12

Olmsted Township Building Code § 1303.01.....................................................6, 7

Olmsted Township Building Code § 1303.02.....................................................6, 7

Olmsted Township Building Code § 1303.03........................................................6

Olmsted Township Building Code § 1306.06........................................................6

Olmsted Township Building Code § 1307.01........................................................................9

Olmsted Township Building Code § 1307.02...................................................................9, 10

Olmsted Township Building Code § 1311.01......................................................................12

Olmsted Township Building Code § 1311.98......................................................................12

Summit County Building Code § 1301.04...........................................................................12

Summit County Building Code § 1301.11...........................................................................12

Summit County Building Code § 1301.13...........................................................................12

Summit County Building Code § 1301.99...........................................................................12

Summit County Building Code § 1305.01.............................................................................7

Summit County Building Code § 1305.04...........................................................................12

Summit County Building Code § 1323.01...........................................................................10

Summit County Building Code § 1323.02......................................................................10, 11

Summit County Ordinance § 761.01 .............................................................................4, 19

Summit County Ordinance § 763.01 .................................................................................20

Summit County Ordinance § 201.01(h)..............................................................................20

## ISSUES PRESENTED

1.     Whether Home Depot was required to obtain building permits or contractor's licenses for work it did not perform, where (a) a permit was obtained by the licensed, third-party contractor Home Depot hired to install a fence, or (b) Home Depot hired a licensed, third-party contractor to install kitchen cabinets.

2.     Whether an individual may bring a private right of action for failure to obtain building permits or contractor's licenses pursuant to local building codes when the codes themselves do not authorize a private right of action.

3.     Whether an individual may assert causes of action for breach of contract, unjust enrichment, violations of the Ohio Consumer Sales Practices Act, the Ohio Home Construction Service Suppliers Act, and the Summit County Consumer Protection Ordinance based solely on alleged technical violations of local building codes where no injury results.

4.     Whether the allegations in Plaintiffs' First Amended Class Action Complaint are sufficient to state claims for breach of contract, unjust enrichment, violations of the Ohio Consumer Sales Practices Act, the Ohio Home Construction Service Suppliers Act, and the Summit County Consumer Protection Ordinance when Home Depot complied with the terms of the parties' written agreements, the terms of the transactions were fully disclosed, and the Plaintiffs allege no problems or defects with the work performed.

## <u>SUMMARY OF THE ARGUMENT</u>

Plaintiffs contracted with Home Depot purchase a fence and kitchen cabinets, and for installation services to be provided by licensed, third-party contractors. These products were installed by licensed contractors, and Plaintiffs have no issues with the products or installation. Plaintiffs sue Home Depot claiming that it violated local building codes because it failed to obtain building permits and contractor's licenses for these installations. However, a permit was obtained to install the fence, and the local building code did not require a permit to install the cabinets. Further, the local building codes did not require Home Depot to obtain a contractor's license, because licensed, third-party contractors—not Home Depot—performed the work. Thus, Home Depot has not violated any building codes, and all of Plaintiffs' claims based upon these purported violations fail.

Moreover, Plaintiffs have no private right of action for the alleged building code violations. Both the state and local building codes vest enforcement authority in local building departments, not Plaintiffs, to impose specific penalties for code violations. Plaintiffs' causes of action for breach of contract, unjust enrichment, and violations of consumer protection statutes are nothing more than claims for building code violations in disguise. These claims fail because they are an attempted end-run around the lack of a private right of action.

Further, all of Plaintiffs' claims fail for independent reasons. There are no allegations that Plaintiffs suffered any damage as a result of Home Depot's alleged failure to obtain separate building permits and contractor's licenses, which is fatal to Plaintiffs' breach of contract claim. Plaintiffs have not established a claim for unjust enrichment because they allege a valid contract governs their relationships with Home Depot, and that they received the benefits they paid for. Plaintiffs' allegations are similarly insufficient to establish a claim under the Ohio Consumer Sales Practices Act, because Plaintiffs have not alleged that any unfair or deceptive act impacted

their decisions to contract with Home Depot. To the contrary, Plaintiffs' contracts demonstrate that all material information was fully disclosed and that Plaintiffs got what they paid for. These deficiencies, among others, also doom Plaintiffs' claims under the Ohio Home Construction Service Suppliers Act and the Summit County Consumer Protection Ordinance.  For these reasons, described more fully below, Plaintiffs' First Amended Class Action Complaint should be dismissed with prejudice for failure to state a claim for relief.

## I.     INTRODUCTION

Plaintiffs purchased a fence and cabinets from Home Depot. Those products were installed by licensed contractors and Plaintiffs allege no defects with the products or their installation. Despite this, Plaintiffs have sued Home Depot, claiming that Home Depot failed to obtain building permits and contractor's licenses for these installations. But a permit was obtained to install the fence and no permit is required to install cabinets. Additionally, no ordinance required Home Depot to obtain a contractor's license for Plaintiffs' projects because Home Depot did not perform the work. Because all of Plaintiffs' claims are based on these alleged ordinance violations, all of their claims fail.

Moreover, Plaintiffs cannot maintain a private cause of action for alleged ordinance violations. The local building codes authorize local building departments, not Plaintiffs, to impose penalties for ordinance violations. Plaintiffs' causes of action for breach of contract, unjust enrichment, and violation of state and local consumer protection laws are merely claims for ordinance violations in disguise. Not only do these claims fail because Home Depot has not violated any applicable ordinance, but they also fail for independent reasons as described below. For these reasons, Plaintiffs' First Amended Class Action Complaint ("FAC") should be dismissed with prejudice for failure to state a claim for relief.

## II.    FACTUAL ALLEGATIONS

Home Depot is a home improvement retailer that operates retail stores across the United States. FAC ¶ 16. In conjunction with its sales of home improvement products, Home Depot offers certain installation services through professional third-party installers. *Id.* ¶¶ 28-30. In that respect, Home Depot acts as a general contractor, arranging for third-party installers to provide services to Home Depot customers. *Id.* ¶ 30. Home Depot has established procedures to manage the licensing, permitting, and performance of these third-party installers. *Id.* As part of Home Depot's procedures to effectively manage compliance, the local, third-party installer who provides the installation service is required to obtain all applicable licenses and permits. *Id.* ¶ 3.

Plaintiffs Joe and Brittany Kovacs (the "Kovacs") live in Olmsted Township, Ohio. *Id.* ¶ 12. In 2016, the Kovacs entered into a contract with Home Depot for fence installation services, which is attached to the FAC. *Id.* ¶ 72; Dkt. No. [6-2]. The Kovacs' contract states:

> Under this agreement, **Home Depot does not perform Installation, but arranges for Installation Professional to do so directly or through Installation Professional's specialty contractors.** Home Depot does not provide, or arrange for, architectural/engineering services or structural changes to dwellings. You will not pay anything to Professional, although Professional may present this Agreement to You for Your review and signature and/or collect Your payment(s) to Home Depot on Home Depot's behalf.

*Id.* at 5, § A (emphasis added). "Installation Professional" is defined as "an independent contractor authorized by Home Depot (licensed and insured as required by Home Depot and applicable law) and the contractor's employees, agents and subcontractors." *Id.* at 4. Directly above Mr. Kovacs' signature, the contract states, "By signing below, You authorize Home Depot to (a) arrange for Installation Professional to perform Installation and/or (b) order and arrange for the delivery of special order merchandise." *Id.* The Installation Professional for the Kovacs' fence installation was Great Lakes Fence. FAC ¶¶ 18-19.

The Kovacs' contract reflected that their fence installation required a permit. *See* Dkt. No. [6-2] at 1. The Kovacs do not allege that no permit was obtained, but that "Home Depot *itself* never obtained a permit *in its name* for the construction of the fence, and instead pushed that responsibility off onto its subcontractor." FAC ¶ 78 (emphasis added). Third-party installer Great Lakes Fence, a licensed contractor in Olmsted Township, obtained the permit to install the Kovacs' fence. *See* Kovacs Permit, attached as Ex. A.[1] The Kovacs agreed to this arrangement in their contract, which provides that "Installation Professional will obtain any required permits and permit numbers where necessary . . . ." *See* Dkt. No. [6-2] at 5, § N.

---

[1] The court may consider this document on a motion to dismiss because it is a public record, is referred to in the complaint, and is central to Plaintiffs' allegations. *See Dobrski v. Ford Motor Co.*, 698 F. Supp. 2d 966, 974-75 (N.D. Ohio 2010).

2

The Kovacs do not allege that their fence was not installed, or that it was improperly installed.[2] Rather than complaining about the fence installation, they base their claims on the allegation that Home Depot was "not registered with the Township in 2016," when their fence was installed. FAC ¶ 34. They allege no injury as a result.

Plaintiffs Frances and Dennis Hido (the "Hidos") live in Sagamore Hills, Ohio, located in Summit County. *Id.* ¶¶ 2, 11. In 2015, the Hidos purchased some kitchen cabinets from Home Depot and contracted with Home Depot for cabinet installation services. *Id.* ¶ 61; Dkt. No. [6-1]. The Hidos attach select portions of the contract to the FAC, which provides that the installation services would be performed by third-party installer Engelke Construction Solutions.[3] *See* Dkt. No. [6-1]. The Hidos allege they paid Home Depot "tens of thousands of dollars," and that Home Depot "had the work performed at the Hidos' home." FAC ¶ 62.

The Hidos do not allege that the work was not completed, that the work or materials were defective, or that they are dissatisfied with the quality of the work or the result. Nor do they allege that they ever complained to Home Depot about any problems with their cabinets or the installation. Now, after using the cabinets without incident for two years, the Hidos complain that Home Depot failed to

---

[2] The Kovacs allege that Home Depot changed the style of the fence at the last minute without informing them, but before Mr. Kovacs signed the contract. FAC ¶ 74. They contend that "problems arose" after the fence was installed because the style of the fence was not approved by their homeowners association. *Id.* ¶ 80. The Kovacs do not assert any claims arising from this alleged problem, nor could they, as the contract precludes any such claim. *See* Dkt. No. [6-2] at 1 (indicating the fence style as "Privacy"); *Id.* at 3, ¶ 8 ("If Your home is part of a Homeowner's Association (HOA), You will need to obtain approvals from the HOA before Installation of Your fence can be scheduled."); *Id.* at 5 § N (same); *Id.* at 3, ¶ 11 ("It is important that You are present during the Installation process. Specifically, . . . at the beginning of the Installation for a final review of the project plans with the Installation Professional. It is also important that you are present at the completion of the Installation, so that You can sign the Approval of Completed Installation . . .").

[3] FAC Exhibit 1 contains pages 1-3 of the Hidos' 5-page contract for installation services, pages 1-5 of a 6-page contract for kitchen cabinets and hardware, and pages 1-2 of a 3-page contract for a range hood overlay. *See* Dkt. No. [6-1]. The missing pages of these form contracts would have contained Terms and Conditions providing that Home Depot itself would not perform any work. A sample contract substantially similar to one the Hidos would have received is attached as Exhibit E. Further, the Hidos do not attach the Engelke Construction Solutions Price Sheet, which is incorporated by reference into their installation contract. *See* Dkt. No. [6-1] at 1. Home Depot attaches the Price Sheet as Exhibit D. *See Dobrski*, 698 F. Supp. 2d at 974 (allowing consideration of "documents attached to the motion to dismiss that are referred to in the complaint and are central to the plaintiff's allegations, even if not explicitly incorporated by reference.).

obtain a building permit for the work and that Home Depot did not hold a contractor's license in the county.[4] *Id.* ¶¶ 63-64. Even though their contract does not mention a permit (or include a charge for one), they allege the work performed "would have required permits, specifically for electrical work, installation of new lights and electrical wiring, drywall removal, ceiling installation, tiling, and other work." *Id.* ¶ 65. The Hidos' contract with Home Depot contradicts this allegation, however, as it provides solely for cabinet installation. *See* Dkt. No. [6-1] at 1. The Hidos do not allege what particular tasks were performed, how their cabinet installation necessitated such tasks, or why a permit would be required for them. Nor do they allege any injury they suffered as a result of the alleged failure to obtain a permit or license.

Based on these allegations, the Hidos and the Kovacs (collectively, "Plaintiffs") assert claims against Home Depot for (1) "Breach of Contract-Illegality-Restitution," (2) Unjust Enrichment, and (3) Violations of the Consumer Sales Practices Act, R.C. § 1345.01 *et seq.* The Hidos also assert claims for (4) Violations of the Home Construction Service Suppliers Act, R.C. 4722.01 *et seq.*, and (5) Violations of the Summit County Consumer Protection Ordinance, § 761.01 *et. seq.*

Plaintiffs purport to assert Counts One and Two on behalf of a class, including

All Ohio property owners who purchased, whether in-store or otherwise, improvement, repair, or remodeling services ("Work") from Home Depot, to be performed at real property owned by the property owners, in a jurisdiction where Home Depot was required to, but was not at the time, registered and/or licensed to act as a general contractor or contractor, or where Home Depot, whether registered/licensed or not, did not obtain required permits for such Work prior to commencement of the Work.

FAC ¶ 83.a. Plaintiffs also purport to represent an "Ohio Consumer Subclass" for purposes of Counts Three and Four, and the Hidos seek to represent a "Summit County Consumer Subclass," for purposes of Count Five. *Id.* ¶¶ 84-85.

---

[4] The Hidos do not allege that installer Engelke Construction Solutions was not a licensed contractor in Summit County.

4

## III.    ARGUMENT

The premise of Plaintiffs' Complaint is that Home Depot's alleged failure to obtain building permits and contractor's licenses violates certain local building ordinances. These claims fail at their inception; the building permit ordinances do not apply here because, as Plaintiffs' allegations and attached contracts show, the third-party installer obtained a permit for the Kovacs' project, and the Hidos' project was merely finish work for which no permit was required. Further, the contractor licensing ordinances do not apply to Home Depot under the circumstances Plaintiffs allege. Because Home Depot was not required to obtain building permits or contractor's licenses for these jobs, Home Depot did not violate any ordinance, and the rest of Plaintiffs' claims—which are predicated on the false assumption that Home Depot violated local law—also fail.[5]

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). The "facial plausibility" standard requires plaintiffs to allege facts sufficient to "raise a right to relief above the speculative level;" mere "labels and conclusions," or "a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). When a complaint does not meet this standard, "'this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court.'" *Id.* at 558 (quoting 5 Wright & Miller § 1216, at 233-234).

### A.    Plaintiffs' Claims Fail Because They Are Based on Purported Violations of Local Ordinances That Do Not Apply

---

[5] Plaintiffs do not allege they suffered any concrete harm as a result of the alleged permitting and licensing violations, and therefore fail to establish an injury in fact sufficient to confer Article III standing. *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016). Plaintiffs allege that they may be harmed in the future, because "failing to obtain permits for the work means that no inspections are performed, which means there are no guarantees [the] work is performed correctly [and] safely." FAC ¶ 124. The Kovacs face no such risk of future harm, because a permit was obtained for their fence installation. *See* Kovacs Permit, Ex. A. And even for the Hidos, the risk is too speculative to be a concrete harm; no injury is "certainly impending." *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013). Accordingly, Plaintiffs' claims should be dismissed for the additional reason that the Court lacks subject matter jurisdiction. *Id.*

1.     The Kovacs' Fence Installation Was Properly Permitted

The Kovacs allege that Home Depot violated local ordinance and code because it "never obtained a permit in its name for the construction of the fence, and instead pushed that responsibility off onto its subcontractor." FAC ¶ 78. Home Depot's third-party installer, Great Lakes Fence, obtained a building permit to install the Kovacs' fence. *Id.*; *see also* Kovacs Permit, Ex. A. Thus, Plaintiffs' contention rests on the unfounded assumption that local code requires multiple permits for the same work. This conclusion is not supported by logic or the law.

The Olmsted Township Building Code[6] ("OTBC") provides that, "*A building permit shall be obtained* from the Building Commissioner or his staff before proceeding with any excavation for, or the construction, alteration, repair, moving or demolition of any building or appurtenant structure." OTBC § 1303.01 (emphasis added). "If the Building Commissioner is satisfied that *the work* described in an application for a permit and the plans and specifications filed therewith conform to and comply with the requirements of the Building Code . . . he shall issue or authorize the issuance of a permit." OTBC § 1306.06(a) (emphasis added). To obtain a permit, the application must provide plans and specifications with "sufficient details to show [the] method of assembly and construction." OTBC § 1303.03(c).

As the OTBC makes clear, a building permit reflects the Building Commissioner's approval of the plans for the construction project and the methods of executing those plans. Thus, where a project has been approved by the Commissioner, and a permit has been obtained, the project may proceed. Here, the plans for installing the Kovacs' fence were approved, and a permit was issued. Home Depot was not required to obtain an additional permit for a project that was already approved.

The Kovacs suggest that every contractor involved in the underlying transaction must obtain a separate permit "in its name." FAC ¶ 78. But under the OTBC, permits are issued in the name of the homeowner, not the contractor. Section 1303.02 provides, "[a]n application for a building permit, signed

---

[6] The Olmsted Township Building Code is not available online. For the convenience of the Court, Home Depot attaches the full Building Code to this Motion as Exhibit B.

by the owner or his authorized agent, shall be filed with the Building Commissioner on a form furnished." *See* OTBC § 1303.02. The homeowner's authorized agent, such as a contractor, *may* apply for a building permit, but the permit application need not be submitted by a contractor. That the Kovacs wish differently does not a code violation make. Simply put, Great Lakes Fence applied for and received the requisite permit. *See* OTBC § 1303.01; Kovacs Permit, Ex. A.

Moreover, the Kovacs did not suffer any harm because no duplicative permit was pulled. Plaintiffs generally allege that "[a]s a result of never obtaining permits, Home Depot's work often goes uninspected. Governmental building departments do not know what to inspect because they are unaware of the projects." FAC ¶ 4. But where a permit *is* obtained, as in the case of the Kovacs' fence, the building authority is aware of the project, and any required inspections are performed. Thus, a duplicative permit serves no logical purpose. Because a permit was obtained for their fence and there is no requirement that Home Depot obtain a duplicative permit for the same work, there was no violation of the OTBC and the Kovacs' claims fail.

### 2.    The Hidos' Cabinet Installation Did Not Require a Permit

The Hidos contend that Home Depot failed to obtain required permits to install their cabinets. *Id.* ¶¶ 65-66. This allegation ignores the facts, because the work the Hidos contracted for did not require a permit, nor have they plausibly alleged that any work requiring a permit was actually performed. The Summit County Building Code ("SBC") provides that:

> No building or structure shall be constructed, altered, removed or demolished nor shall the occupancy be changed from one use or use group to another; nor shall any equipment or fixtures be installed or altered if installation of such equipment or fixture is regulated by this Building Code, without first filing an application with the Building Official and obtaining a permit therefor.

SBC § 1305.01. This provision does not apply to cosmetic work like replacing cabinets. The SBC requires a building permit "whenever a change to the structural integrity of a building is proposed, and/or finishing an area or room that was previously unfinished." *See* Summit County Building

7

Department, *When do you need a permit?*, available at https://co.summitoh.net/images/stories/BuildingStandards/pdf/Property/Residential.pdf (hereinafter, "Permit Guidelines"). The Building Department provides specific examples of projects for which a permit is *not* required: "Painting, papering, tiling, carpeting, *cabinets*, countertops and similar finish work," and "Replacing of existing fixtures (faucets, sinks, toilets, receptacles, switches, *light fixtures*) without altering existing systems." *Id.* at ¶¶ 10, 18 (emphasis added). The Building Department's interpretation of its permit ordinance is consistent with the Ohio Board of Building Standards regulation, which exempts from approval requirements the "[p]ainting, papering, tiling, carpeting, *cabinets*, counter tops and similar finish work." *See* Ohio Admin. Code 4101:8-102.10 (emphasis added). No permit was required to install the Hidos' cabinets.

The Hidos' contract with Home Depot supports this conclusion. *See* Dkt. No. [6-1]. Their contract specifically provides that the "JOBSITE MUST BE COMPLETELY ENCLOSED WITH ALL WINDOWS, DOORS, INTERIOR WALLS, ROUGH PLUMBING AND ELECTRICAL WORK COMPLETED PRIOR TO THE INSTALLATION." *Id.* at 2. Further, an "Installer Site Analysis" was required prior to beginning the installation to "check for unusual situations which may require additional labor." *Id.* at 1-2. Plaintiffs do not allege any "unusual situations" required additional work outside of the standard cabinet installation they contracted for, or that they paid Home Depot for any additional work. Because the Hidos contracted with Home Depot for cabinet installation, which does not require a permit, they cannot allege that Home Depot violated the SBC. *See* Permit Guidelines ¶ 18.

Although the contract makes clear that the only work to be performed at the Hidos' home is the installation of cabinets, the Hidos allege that "the work Home Depot and/or its subcontractors performed would have required permits, specifically for electrical work, installation of new lights and electrical wiring, drywall removal, ceiling installation, tiling, and other work." FAC ¶ 65. This allegation does not show that work requiring a permit was actually performed. First, "tiling" is specifically exempted from

permitting requirements, as is similar finish work such as "drywall removal" and "ceiling installation." *See* Permit Guidelines ¶ 10; Ohio Admin. Code 4101:8-102.10. Second, the "installation of new lights and electrical wiring" does not require a permit in Summit County, which is simply the "replacing of existing fixtures." *See* Permit Guidelines ¶ 10. Further, the Hidos' vague reference to "electrical work" does not suffice, as the Ohio Board of Building Standards regulations exempt from permitting requirements minor electrical work that might be associated with cabinet installation, including "[r]einstallation of attachment plug receptacles," "[r]eplacement of branch circuit overcurrent devices of the required capacity and type in the same location" and "electrical wiring, devices, appliances, apparatus, or equipment operating at less than 25 volts and not capable of supplying more than 50 watts of energy." *See* Ohio Admin. Code 4101:8-102.10. And given that the Hidos' contract required that all "electrical work [be] completed prior to the installation," Dkt. No. [6-1] at 2, they cannot plausibly allege that Home Depot's third-party installer performed any electrical work that may have required a permit. Because the Hidos have not alleged that any specific work performed required a permit, their claim that Home Depot's failure to obtain a permit violated a Summit County ordinance fails.

3.    <u>The Ordinances Requiring Contractor Licenses Do Not Apply to Contractors Like Home Depot Who Do Not Actually Perform Work In the Jurisdiction</u>

The Kovacs claim that Home Depot was not registered as a general contractor "as required by law in Olmsted Township." FAC ¶ 76. The Hidos similarly contend that Home Depot was required to be licensed or registered as a contractor in Summit County "before it was permitted to perform work and act as a general contractor." *Id.* ¶ 36 (emphasis added). Plaintiffs' legal conclusions are not supported by the law or the factual allegations in the FAC.

The OTBC provides that, "No contractor or subcontractor shall *perform any work* within the Township without a current Certificate of Contractor Registration from the Building Commissioner." *See* OTBC § 1307.02 (emphasis added); *see also* OTBC § 1307.01 (defining contractor as "any person or entity who contracts or is employed to *perform any work* involved in construction . . . .") (emphasis

9

added). Here, the Kovacs have not alleged that Home Depot performed any work at their home. Rather, they allege only that Home Depot "had the work performed at the Kovacs' home," FAC ¶ 75, and that they dealt with "Home Depot's subcontractor, Great Lakes Fence." *Id.* ¶ 18. And the Kovacs' contract specifically provides that Home Depot would *not* install the Kovacs' fence. *See* Dkt. No. [6-2] at 5 ("Under this agreement, *Home Depot does not perform Installation.*") (emphasis added). Home Depot did not "perform any work" in Olmsted Township, and the licensing requirement of OTBC § 1307.02 does not apply.

Nearly identical to the OTBC, the SBC states, "No contractor shall *perform any work* within the County without a current Certificate of Contractor Registration from the Building Official." SBC § 1323.02(a) (emphasis added). "Contractor" under the SBC is defined as "any person that contracts or is employed to perform any work within the County *that requires a permit*." SBC § 1323.01(a) (emphasis added).

Pursuant to the plain language of the SBC, no contractor's license is required where no building permit is required. As discussed in Section III(A)(2), *supra*, the Hidos' cabinet installation did not require a permit, therefore the failure to obtain a contractor's license for that work cannot constitute a violation of the SBC. SBC §§ 1323.01(a), 1323.02(a).

But even if the Hidos' cabinet installation did require a permit, Home Depot still did not need a contractor's license. Home Depot did not "perform any work" in Summit County. The Hidos allege that Home Depot accepted payment for the installation and "then subcontracted work to one or more subcontractors." FAC ¶ 2; *see also id.* ¶ 62 (Home Depot "had the work performed at the Hidos' home"); *id.* ¶ 70 (Home Depot "had multiple subcontractors work on the Hidos' home"). There are no allegations in the FAC that anyone from Home Depot ever visited the Hidos' home, installed cabinets, or otherwise performed any work associated with the Hidos' alleged "kitchen remodeling project." This arrangement—whereby Home Depot would hire a third-party installer to install the cabinets, rather than

10

performing the work itself—is memorialized in the contract the Hidos entered into with Home Depot. *See* Dkt. No. [6-1]. The portion of the contract attached to the FAC describes the job as an "INSTALL" and states under the "Custom Labor Selected" heading, "CABINET INSTALL LOOK AT ENGELKE CONSTRUCTION SOLUTIONS PRICE SHEET." *Id.* at 1; *see also* Price Sheet, Ex. D. And in detailing the installation labor, the contract repeatedly refers to "THE INSTALLER" as a third-party. *See* Dkt. No. [6-1] at 1-2. Because the factual allegations and the contract show that a licensed third-party installer, not Home Depot, installed the Hidos' kitchen cabinets, Plaintiffs have not alleged that Home Depot "perform[ed] any work." Thus, SBC § 1323.02(a) did not require Home Depot to obtain a contractor's license.

**B.      All of Plaintiffs' Claims Fail Because They Are An Attempted End-Run Around the Lack Of A Private Right of Action**

Because Plaintiffs fail to allege a violation of any local ordinance, all of its claims should be dismissed. Plaintiffs' claims also fail because there is no private right of action for failure to obtain a building permit or contractor's license, and Plaintiffs cannot manipulate other state laws to create a cause of action where none exists.

There is no private right of action for violation of a municipal regulation. *See Leichtman v. WLW Jacor Commc'ns, Inc.*, 634 N.E.2d 697, 700 (Oh. Ct. App. 1994). "[W]here an agency is charged with enforcement of certain laws, these laws do not confer upon an individual the right to bring a private civil action absent a 'clear implication' that such a remedy was intended." *Save the Lake v. Hillsboro*, 815 N.E.2d 706, 711 (Ohio Ct. App. 2004). When an action is authorized to be "instituted by a particular person or office, the suit may not be instituted by another." *See id.*

The state and local building codes in Ohio do not authorize a private right of action. The Ohio Residential Building Code provides that "[a] municipal, township, or county residential building department . . . shall enforce provisions of the rules of the board . . . relating to construction, arrangement, and the erection of residential buildings or parts thereof . . . ." *See* Ohio Admin. Code §

11

4101:8-102.11; *see also* § 4101:8-104.2.1 ("The residential building official is responsible for the enforcement of the rules of the board . . . ."). The Summit County Building Official is designated as the enforcing officer of the SBC, *see* SBC § 1301.04, and the Olmsted Township Building Commissioner administers the OTBC. *See* OTBC § 1301.08. These officials also have the duty to notify owners of code violations, issue stop work orders, or revoke permits. *See* OTBC §§ 1311.01-.05; SBC §§ 1301.11, 1301.13. Further, both the SBC and OTBC provide specific penalties for failure to comply with the code. *See* OTBC § 1311.98; SBC §§ 1301.99, 1305.04.

Lacking a private right of action, Plaintiffs attempt to assert claims under other state laws that amount to nothing more than an attempt to recover for alleged building code violations. But when an "ordinance itself contains no language conferring a private right of action," a person who violates the ordinance may not be held liable under other legal theories merely because of the alleged violation. *Yonut v. Salemi*, No. 05AP-1094, 2006 WL 1495068, at *4-5 (Ohio Ct. App. June 1, 2006) (no private right of action for violation of ordinance requiring property owners to keep sidewalks in good repair); *Schneider v. Kumpf*, 58 N.E.3d 1220, 1238 (Ohio Ct. App. 2016) (no private right of action for violation of dog warden's statutory duties, where statute provides a criminal penalty); *Crull v. Maple Park Body Shop*, 521 N.E.2d 1099, 1102 (Ohio Ct. App. 1987) (no private right of action for violation of statute requiring registration of fictitious name, where statute provides the remedies and consequences for violation). Because Plaintiffs have no private right of action for the alleged code violations, all of their claims should be dismissed.

### C. Plaintiffs' Claims Also Fail for Independent Reasons

In addition to the reasons stated above, each of Plaintiffs' claims should be dismissed for the following additional, independent reasons.

1. <u>Breach of Contract – Illegality – Restitution</u>

In Count One, Plaintiffs contend that they had contracts with Home Depot under which they would pay for certain services and "Home Depot would provide those services in compliance with local codes and ordinances." FAC ¶ 120. Plaintiffs inconsistently allege that (A) the contracts were illegal, because Home Depot failed to obtain required permits and licenses, *id.* ¶ 121; and (B) Home Depot breached the contracts by failing to obtain required permits and licenses. *Id.* ¶ 122. These two theories are mutually exclusive, and together these allegations cannot state a claim for relief. But even if Plaintiffs had asserted illegality and breach of contract as separate, alternative claims, both would fail.

First, Plaintiffs' contracts with Home Depot are not "illegal contracts." An illegal contract is "a promise that is prohibited because the performance, formation, or object of the agreement is against the law." *See Am. Family Ins. v. Hoop*, No. 13CA983, 2014 WL 4292827, at *7 (Ohio Ct. App. Aug. 26, 2014). The Ohio Court of Appeals has held that the failure to obtain a building permit does not render a construction contract illegal. *See McCabe/Marra Co. v. Dover*, 652 N.E.2d 236, 249 (Ohio Ct. App. 1995). Plaintiffs do not allege their contracts provided that Home Depot would *not* comply with local codes. To the contrary, Home Depot agreed that all work would be performed in accordance with local codes and ordinances. FAC ¶ 56(b). Plaintiffs' contention is merely that Home Depot failed to comply with this obligation. A breach of a contract does not make it illegal. Moreover, in this case, there was no breach.

Under Ohio law, to state a claim for breach of contract a plaintiff must establish: (1) the existence of a valid contract; (2) performance by plaintiff; (3) breach by defendant; and (4) damage or loss to plaintiff. *Res. Title Agency, Inc. v. Morreale Real Estate Servs., Inc.*, 314 F. Supp. 2d 763, 769 (N.D. Ohio 2004). Setting the illegality allegations aside, Plaintiffs allege that they entered into installation contracts with Home Depot, and that Home Depot breached its obligation under the contracts to comply with local ordinances. Even if true (which they are not), these allegations do not establish a breach of contract claim because Plaintiffs do not allege any damage from the alleged breach.

The Kovacs do not allege they were damaged by Home Depot's failure to obtain a duplicate permit or license. Nor could they, as their fence was properly installed, and a permit was obtained by the licensed contractor who actually installed it. They do not even allege the possibility that their fence is unsafe or improperly constructed. Accordingly, the Kovacs cannot establish a claim for breach of contract because they have failed to allege any damages.

Similarly, the Hidos received the cabinets they contracted for, and do not contend that their installation was faulty or defective in any way. Rather, they allege only that "there are no guarantees [the] work is performed correctly [and] safely." FAC ¶ 124. But the Hidos have not alleged that they inspected the work or hired anyone to do so, that any problems were found in their kitchen, or that they had to pay another contractor to fix the work.[7] Nor do they allege that they complained to Home Depot about any issues with the cabinets or their installation. To state a claim for breach of contract, Plaintiffs have to *plausibly* allege that they have suffered some damage or loss. They have not done so.

2.      Unjust Enrichment

A plaintiff seeking a remedy under a contract cannot also seek equitable relief under an unjust enrichment theory because the terms of the contract define the parties' relationship. *Long v. State Farm Ins.*, No. 2:13-CV-786, 2014 WL 12654134, at *5 (S.D. Ohio June 3, 2014) (quoting *Wolfer Enter., Inc. v. Overbrook Dev. Corp.*, 724 N.E.2d 1251, 1253 (Ohio Ct. App. 1999)). Thus, Plaintiffs' unjust enrichment claim fails because Plaintiffs allege the existence of valid contracts that govern their relationships with Home Depot. FAC ¶¶ 61, 72. *See Randolph v. New England Mut. Life Ins. Co.,* 526 F.2d 1383, 1387 (6th Cir. 1975) (where plaintiff's unjust enrichment or quasi contract theories "are no broader than his contract theory," the "unjust enrichment or quasi-contract theories are unavailable").

Additionally, Plaintiffs have not alleged facts to support a claim for unjust enrichment. To state

---

[7] Home Depot warrants the workmanship of all installation services it offers for one year from the completion date. *See* Dkt. No. [6-2] at 5, § T. A similar warranty would have been included in the Hidos' installation contract on the pages they omit from their attachment. *See* Form Contract, Ex. E at 6.

an unjust enrichment claim under Ohio law, a plaintiff must establish "(1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant *under circumstances where it would be unjust to do so* without payment." *Goodman v. Cisco Sys., Inc.*, 148 F. App'x 378, 382 (6th Cir. 2005) (emphasis added) (quoting *Hambleton v. R.G. Barry Corp.*, 465 N.E.2d 1298, 1302 (Ohio 1984)). A plaintiff cannot recover for unjust enrichment if he "received the benefit of what he paid for." *Marlowe v. Nature's Bounty Co.*, No. 1:17CV332, 2017 WL 2291683, at \*4 (N.D. Ohio May 25, 2017). Here, Plaintiffs cannot establish that they paid for more than they received. Plaintiffs do not allege they paid Home Depot a separate fee for permits or contractor's licenses. The Kovacs allege that they paid for a fence, and their contract specifically provided that the cost of the permit was included in the price. *See* Dkt. No. [6-2] at 1. The Kovacs received a permit and a fence. *See* Kovacs Permit, Ex. A. The Hidos' contract indicates that they paid for cabinet products and cabinet installation labor, which is what they received. *See* Dkt. No. [6-1]. Because Plaintiffs received the benefit of their bargains, they conferred no extra-contractual benefit on Home Depot and they cannot state a claim for unjust enrichment.

### 3.  Consumer Sales Practices Act

Plaintiffs allege that Home Depot violated the Ohio Consumer Sales Practices Act ("CSPA") by (1) misstating "the estimated cost of completion of its work, because it is not allowed to charge for this work legally," FAC ¶ 144; (2) failing to provide Plaintiffs "with a written itemized list of repairs and materials which specifically identifies the individuals performing the repair or service," *id.* ¶ 145; (3) knowingly breaching its agreement and contract with its customers by failing to fulfill its duties under local codes and ordinances, *id.* ¶ 146; (4) falsely advertising on its website that it had a state-wide license number, *id.* ¶ 147; and (5) never providing the promised services (services that comply with local ordinances), and allowing more than eight weeks to pass without making a full refund. *Id.* ¶ 148.

To state a claim under the CSPA, a plaintiff must allege that the defendant performed an act or

omission that was unfair or deceptive, and that the alleged act "impacted [the plaintiff's] decision to purchase the item at issue." *In re Porsche Cars N. Am., Inc.*, 880 F. Supp. 2d 801, 868 (S.D. Ohio 2012).

Plaintiffs' first and second claims—that Home Depot misstated the cost of the work and failed to provide written itemized lists of services and materials identifying the individuals performing the service—are not supported by the facts. The Kovacs attach their contract with Home Depot, detailing the type of fence product, the footage, the number of gates, and the types of rails and posts, which totaled $2,980. *See* Dkt. No. [6-2] at 1. The Kovacs allege that they paid $2,980 for their fence. FAC ¶ 3. Further, they allege that "[a]t all times relevant, the Kovacs dealt and worked with Home Depot . . . along with Home Depot's subcontractor, Great Lakes Fence." FAC ¶ 18. And the permit issued for their fence installation was obtained by Great Lakes Fence. *See* Kovacs Permit, Ex. A. The Kovacs cannot plausibly allege Home Depot failed to provide them sufficient information or otherwise deceived them.

Similarly, the Hidos attach portions of their contract with Home Depot to the FAC, which provides the itemized costs for each cabinetry product purchased, *see* Dkt. No. [6-1] at 4-10, a labor charge of $6,119, and that the labor would be performed by Engelke Construction Solutions. *Id.* at 1. The Price Sheet also detailed the labor charges. *See* Price Sheet, Ex. D. The Hidos do not allege they paid more than the price they contracted for. Thus, the Hidos do not plausibly allege that Home Depot withheld material information from them.

Plaintiffs' third claim is duplicative of their breach of contract claim, and fails for the reasons discussed in Section III(C)(1), *supra*. Additionally, Plaintiffs cannot convert a breach of contract claim into a CSPA claim. *See Nelson v. Pieratt*, No. CA2011-02-011, 2012 WL 2088635, at *3 (Ohio Ct. App. June 11, 2012) ("The mere fact that a party has breached a contract or violated a warranty does not give rise to a CSPA claim."). Accordingly, Plaintiffs cannot state a CSPA claim based solely on their defective breach of contract claim.

Plaintiffs' fourth CSPA claim contends that Home Depot falsely advertised a license number that

it did not have. FAC ¶ 147. Specifically, Plaintiffs contend that Home Depot listed license number "46992" on its website, "which is not a licensing number for any state-wide construction-related license." *Id.* ¶ 55. This claim fails because Plaintiffs do not allege they viewed the Home Depot website, or the particular license number they allege to be false, prior to contracting with Home Depot. To assert a CSPA claim "premised on affirmative conduct, a plaintiff must allege that he 'saw or was . . . aware of the alleged misrepresentations at any time before or during the purchase of the [allegedly defective product.]'" *In re Porsche Cars*, 880 F. Supp. 2d at 870. Because Plaintiffs do not allege that they actually viewed the license numbers listed on Home Depot's website, or that they were misled by one of those numbers, they cannot establish a CSPA claim on this basis. Additionally, the license number 46992 listed on Home Depot's website is not misleading. To the contrary, Home Depot holds specialty contractor's licenses with the Ohio Construction Industry Licensing Board ("OCILB") through its Licensee, Craig R. Washington, under license numbers "HV-0000046992" and "PL-0000046922." *See* OCILB Licensee Search, attached as Ex. C.[8] These licenses can be viewed on the OCILB website via the Company Licensee Lookup. *See id.* Thus, Plaintiffs' allegation that Home Depot falsely advertised its license information is wrong and cannot support a CSPA claim.

Plaintiffs' fifth CSPA claim—that Home Depot "never provided the promised services to any of its customers" without issuing full refunds—finds no support in Plaintiffs' factual allegations. Kovacs allege their fence was installed, and the Hidos allege their cabinets were installed. Regardless of whether those services were provided in accordance with local permitting and licensing requirements, they were provided to Plaintiffs. Moreover, Plaintiffs do not allege that they ever requested any refund from Home Depot. Accordingly, Plaintiffs fail to state a CSPA claim, and Count Three should be dismissed.[9]

---

[8] Exhibit C reflects the public record information found on the OCILB Company Licensee Lookup, available at https://apps.com.ohio.gov/dico/CompanyLicenseeLookup/. Because this is a matter of public record, the Court may consider it in ruling on a motion to dismiss. *See Dobrski*, 698 F. Supp. 2d at 974.

[9] Plaintiffs' class claim for damages under the CSPA also fails. In a class action under the CSPA, the scope of damages available is limited to actual damages. *See Felix v. Ganley Chevrolet, Inc.*, 49 N.E. 3d 1224, 1230-31

4.      Home Construction Service Suppliers Act

The Hidos allege, in the alternative to their CSPA claims, that Home Depot violated the Ohio Home Construction Service Suppliers Act ("HCSS"), R.C. § 4722.01 *et seq.*, by (1) "failing to provide a full refund with a reasonable period of time . . . for services that it failed to deliver in accordance with the contract, namely all services provided because they were not in compliance with local codes and ordinances," FAC ¶ 161; (2) "intentionally misstat[ing] the estimated cost of the home construction services provided," *id.* ¶ 162; and (3) "intentionally misrepresent[ing] aspects of the transaction, *i.e.,* that work would be done in accordance with local codes and ordinances," *Id.* ¶ 163.

The Hidos' own allegations are fatal to these claims. In asserting claims under the CSPA, Plaintiffs specifically allege that "the contracts between Home Depot and its customers are not 'home construction service contract[s]' as defined in R.C. [§] 4722.01. Specifically, Home Depot does not construct residential buildings or separate ancillary structures, but only provides rehabilitation and remodeling services." FAC ¶ 139. Based on this allegation, Home Depot does not meet the definition of a "home construction service supplier" with respect to the Hidos. R.C. § 4722.01. Accordingly, the HCSS does not apply.

Moreover, the Hidos fail to allege any facts to support an HCSS claim. The Hidos simply repeat the statutory language of R.C. §§ 4722.03(A)(3)(f), (A)(7), and (A)(8). Under subsection (A)(3)(f), the Hidos have not alleged that Home Depot "failed to deliver" the services for which it received payment. The Hidos received the cabinets and installation services for which they paid. They did not pay for a permit or receive one. The Hidos' subsection (A)(7) claim that Home Depot "intentionally misstated the estimated cost" fails because the Hidos do not allege Home Depot charged them more than the contract price for their cabinets or their installation.

(Ohio 2015). "Plaintiffs bringing [CSPA] class-action suits must allege and prove that actual damages were proximately caused by the defendant's conduct." *Id*. at 1231. Plaintiffs do not allege that the Ohio Consumer Subclass members have suffered any actual damages as a result of Home Depot's alleged failure to obtain permits and licenses. Thus, the Court should, at a minimum, dismiss Plaintiffs' CSPA class claim for damages.

Nor have Plaintiffs alleged any facts to plausibly suggest that Home Depot "misrepresented aspects of the transaction." FAC ¶ 163. Even accepting as true the Hidos' contention that the SBC required a building permit and a contractor's license for their "kitchen remodeling project," that requirement is not set forth in their contract, nor is that conclusion evident from the SBC or the Building Department guidance. Moreover, there is no allegation that the quality of the work was not in accordance with local codes and ordinances. Thus, the Hidos cannot plausibly allege that any failure to comply with the SBC was intentional. Accordingly, the Hidos' HCSS claims should be dismissed.

Additionally, the Hidos cannot recover damages for the purported violations of HCSS. Section 4722.08 provides that "the owner may, *in an individual action*, rescind the transaction or recover the owner's *actual economic damages* plus an amount not exceeding five thousand dollars in noneconomic damages." R.C. § 4722.08(A) (emphasis added). In such an action, "revocation of the transaction must occur within a reasonable time after the owner discovers or should have discovered the ground for it and before any substantial change in condition of the subject of the transaction." R.C. § 4722.08(B). The Hidos have not asserted an individual claim under HCSS, but a class claim, for which the only remedy is "a declaratory judgment, an injunction, or other appropriate relief." R.C. § 4722.08(C). Even if the Hidos sought to proceed individually on this claim, they did not revoke the transaction within a reasonable time. Two years after their kitchen cabinets were properly installed is far too late for revocation, as the installation is a substantial change in the condition of the transaction. And finally, the Hidos do not allege that they have suffered any actual economic damages, as required to recover under the HCSS. Thus, the Hidos' HCSS claim for damages should be dismissed.

5.   Summit County Consumer Protection Ordinance

The Hidos also assert claims for violation of the Summit County Consumer Protection Ordinance, § 761.01 *et. seq.*, alleging that (1) Home Depot used untrue and misleading advertising in its sales presentations, written estimates, and agreements, advertising that it could perform the work

promised in compliance with local codes and ordinances, and that required permits would be obtained; (2) Home Depot unfairly took advantage of consumers and their lack of knowledge as to Home Depot's registration and licensing which resulted in a gross disparity between the amounts paid and the value received; and (3) Home Depot engaged in unfair sales practices by representing that the home improvement services had the approval, standard, characteristics, and benefits that it did not have— compliance with local ordinances and codes. FAC ¶¶ 172, 175-76.

The Hidos do not allege that they saw or relied on any allegedly deceptive advertising that induced them to contract with Home Depot, which is fatal to their first claim. *See* Summit County Ordinance § 763.01 (prohibiting false advertising with the intent to "induce the public in any manner to enter into any obligation").

The Hidos' second claim requires a plaintiff to show "a gross disparity between the value received by a consumer and the price paid to the consumer's detriment." *Id.* § 201.01(h). The Hidos have not plausibly alleged that there is a "gross disparity" between the amount they paid Home Depot and the value of the cabinets and installation services they received. Instead, the Hidos had new cabinets installed—the looks and performance of which they do not complain—for which they paid Home Depot a market price. There is no "gross disparity" here.

Finally, the Hidos' third claim fails because there was nothing "unfair or deceptive" about Home Depot's contract with the Hidos. The Hidos received cabinets with all of the "characteristics" and "benefits" for which they contracted, and there is no allegation that the cabinets were installed incorrectly. Because the Hidos received the benefit of their bargain, they cannot state a claim under the Summit County Consumer Protection Ordinance.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs' First Amended Complaint should be dismissed for failure to state a claim.

Dated: August 28, 2017

Respectfully submitted,

/s/ H. Alan Rothenbuecher
H. ALAN ROTHENBUECHER **BENESCH,**
**FRIEDLANDER, COPLAN**
**& ARONOFF LLP**
200 Public Square, Suite 2300
Cleveland, Ohio 44114-2378
Telephone: 216.363.4500
Facsimile: 216.363.4588
Email: har@beneschlaw.com
Ohio Bar No. 0041883


S. Stewart Haskins II
Meryl W. Roper
Allison Hill White
KING & SPALDING LLP
1180 Peachtree Street
Atlanta, Georgia 30309
Telephone: (404) 572-4600
Facsimile: (404) 572-5100
shaskins@kslaw.com
mroper@kslaw.com
awhite@kslaw.com
(Motions to admit *pro hac vice* pending)

*Attorneys for Defendant*
*HOME DEPOT U.S.A., INC.*


## LOCAL RULE 7.1(f) CERTIFICATION

Pursuant to Local Rule 7.1(f), the undersigned hereby certifies that Defendants' Motion to

Dismiss filed contemporaneously herewith adheres to the page limitations set forth in Local Rule 7.1(f)

for standard cases, which is the track recommended by the Court. The above-captioned case has not yet

been assigned to a specified track.

## MEET AND CONFER COMPLIANCE CERTIFICATE

On August 25 and 28, 2017, Counsel for Home Depot, Meryl W. Roper, conferred with Plaintiffs' Counsel, Dan Myers and Samantha Vajskop, via email regarding the contents of this Motion. After a good faith effort to resolve the issues presented here, Counsel for the parties could not reach an agreement.

## CERTIFICATE OF SERVICE

I hereby certify that on August 28, 2017, a copy of the foregoing Defendant's Motion to Dismiss Plaintiffs' First Amended Class Action Complaint and Supporting Memorandum was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. mail. Parties may access this filing through the Court's system.

/s/  H. Alan Rothenbuecher
H. ALAN ROTHENBUECHER
BENESCH, FRIEDLANDER, COPLAN
& ARONOFF LLP
200 Public Square, Suite 2300
Cleveland, Ohio 44114-2378
Telephone: 216.363.4500
Facsimile: 216.363.4588
Email: har@beneschlaw.com
Ohio Bar Number 0041883