UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| FRANCES HIDO, et al., | ) | CASE NO. 5:17-cv-01116-BYP |
| | ) | |
| Plaintiffs, | ) | |
| | ) | JUDGE BENITA Y. PEARSON |
| vs. | ) | |
| | ) | |
| HOME DEPOT U.S.A., Inc., | ) | **PLAINTIFFS' MOTION FOR** |
| | ) | **CLASS CERTIFICATION WITH** |
| Defendant. | ) | **MEMORANDUM IN SUPPORT** |

Pursuant to Federal Rule of Civil Procedure 23, Plaintiffs respectfully move the Court for an Order: (1) certifying this action as a class action; and (2) appointing counsel for Plaintiffs as Class Counsel. Plaintiffs base their Motion on the allegations in the First Amended Complaint, the attached Memorandum in Support, the transcript of the depositions of Home Depot corporate representative Scott Harrington (filed under seal), Declarations in Support by each of the Plaintiffs with exhibits, Declaration by Plaintiffs' data expert Matthew Pohl with exhibits (redacted with full version filed under seal), Declaration by Plaintiffs' construction expert Richard Zimmerman with exhibits, Table of Political Subdivision Ordinances, trial court cases on registration, and Declarations in Support of Appointment as Class Counsel by Daniel Myers and Joseph Condeni. Respectfully submitted,

<table>
<tr><td>

*/s/ Daniel J. Myers*
Daniel J. Myers, Esq. (0087909)
MYERS LAW, LLC
600 East Granger Road, Second Floor
Cleveland, Ohio  44131
Phone:  (216) 236-8202
Fax:     (216) 674-1696
DMyers@MyersLawLLC.com
*Proposed Lead Counsel for Class*
*Counsel for Plaintiffs*

</td><td>

*/s/ J. A. Condeni*
JOSEPH A. CONDENI (0030275)
*CONDENI LAW LLC*
600 E. Granger Rd., Second Floor
Cleveland, Ohio 44131
Phone:  (216) 771-1760
Fax:     (216) 771-3387
joe@condenilaw.com
*Proposed Counsel for Class*
*Counsel for Plaintiffs*

</td></tr>
</table>

1

**MEMORANDUM IN SUPPORT**

I. **SUMMARY AND STATEMENT OF THE FACTS**

Home Depot U.S.A., Inc. ("Home Depot") is more than just a retail store—for years it illegally acted as a construction contractor for Ohio property owners. This case was filed to address two separate issues. First, Home Depot did not have the legal authorization, i.e. registration / license, to act as a construction contractor. Second, Home Depot failed to obtain legally required permits for the projects. Either of these omissions made Home Depot's transactions illegal in Ohio. Ohio law allows recovery of restitution by customers. Because of the pervasiveness of this common illegal conduct, the number of customers effected, and the fact that the claims of Plaintiffs are the same as those of the proposed classes, Plaintiffs respectfully request certification of two statewide classes and one Summit County class.

    A.    THE HOME DEPOT DO-IT-FOR-ME CONTRACTOR PROGRAM.

Home Depot has a "Do-It-For-Me," or "DIFM," business model in which it contracts with property owners for the performance of home improvement projects. (Harrington Dep., 69:5-70:4; 70:17-72:16) (filed under seal). Home Depot works as a construction contractor, and subcontracts the physical labor to service providers of its own choosing. (*Id.*, 54:6-54:18, 69:5-70, 70:17-72:16, 92:22-93:5); (Zimmerman Decl., ¶¶ 17-23) (attached as Exhibit 1); *see also Home Depot U.S.A., Inc. v. S.C. Dept. of Revenue*, S.C. Admin. L. Ct. Case No. 15-ALJ-17-0253-CC, Final Decision and Order, at p. 5 (attached as Exhibit 9). Home Depot contracts with property owners and Home Depot pays subcontractors in each and every DIFM transaction. (Harrington Dep., 23:4-24:8, 90:4-14, 95:1-6, 203:12-18). Home Depot is required to be registered / licensed in Ohio's political subdivisions for this program. (*Id.*, 130:10-17); (Zimmerman Decl., ¶¶ 17-23).

There is also an expectation on Home Depot that it will comply with all state and local regulatory requirements for all installation work. (Harrington Dep., 45:3-6). This is a multi-billion

dollar line of business for Home Depot. (Exhibit 9, at 5). Matt Pohl discusses the amounts at issue in his Declaration and report, redacted to remove confidential information, but also filed sealed, *in toto*. (Pohl Decl., ¶ 42) (attached as Exhibit 2)

      B.      HOME DEPOT'S ILLEGAL CONDUCT

Home Depot transacts business and operates as a construction contractor throughout Ohio, without required (1) legal registration / license or (2) work permits from local building jurisdictions. (Zimmerman Decl., ¶¶ 24-33, 37); (Pohl Decl., ¶¶ 42-46). This jeopardizes the health and safety of Home Depot customers and others. (Zimmerman Decl. ¶¶ 44-47, 51). These local jurisdictions similarly and commonly define the type of entity that requires registration / licensing, as well as type of work requiring permits. (*Id.*, ¶ 24-26, 32-33, 40-41); (*see also* Ordinance Table) (attached as Exhibit 12). Home Depot is an entity requiring registration / licensing as a contractor.

Home Depot's failure to obtain legal authorization, or permits, means that critical inspections of the work are not performed, and customers lack protections of a bond or building authority project oversight. (Zimmerman Decl., ¶ 45-47). This includes the Hidos' project, where electrical, plumbing, and other hazardous work was performed. (*Id.*, ¶¶ 33-43). Home Depot takes money from its customers for the performance of work for which it cannot legally contract.

      C.      THE REPRESENTATIVE TRANSACTIONS

Home Depot took money and transacted with the Hidos in 2015 for a kitchen remodeling project, including electrical and plumbing work, without first being registered in Summit County, without ever becoming registered during the project, and without obtaining any required permits. (F. Hido Decl., ¶¶ 11-12, 21-23) (attached as Exhibit 3); (D. Hido Decl., ¶¶ 12-13, 21-22, 26) (attached as Exhibit 4). Home Depot first became registered more than a year after the project was completed, finally admitting it was a general contractor requiring registration. (F. Hido Decl., ¶ 23, at Ex. 2). Home Depot took money and transacted with the Kovacses for installation of a fence

3

in 2016 without the required registration. (B. Kovacs Decl., ¶¶ 11-15, 23) (attached as Exhibit 5); (J. Kovacs Decl., ¶¶ 10-14, 22, at Ex. 2) (attached as Exhibit 6).

    D.    THE CLASS CLAIMS

The Plaintiffs, for themselves and on behalf of the Ohio Class, assert claims for breach of contract / restitution and unjust enrichment. *See, e.g.*, *McClennan v. Irvin and Co.*, 8th Dist. No. 36798, 1978 Ohio App. LEXIS 9659, *14-17. For the Ohio Consumer Subclass, Plaintiffs bring additional claims under the CSPA for this conduct. R.C. 1345.09(B); *State ex rel. Celebrezze v. Tieman*, Franklin County Case No. 89CV075122, OPIF # 10001257, at pg. 9, ¶ 10 (filed in OPIF May 30, 1991) (declaring the lack of a local contractor license / registration a violation of the CSPA and awarding restitution). Finally, for the Summit County Consumer Subclass, the Hidos bring an additional claim under Summit County's Consumer Protection Ordinances. Summit County Cod. Ord. § 761.04. The Summit County Consumer Subclass's actual damages must be trebled. (*Id.*) Ohio courts measure of the actual damages the same—restitution. *McClennan, at *1978 Ohio App. LEXIS 9659, at *14-17* (awarding the purchaser restitution due to the illegality transaction with unlicensed seller); (*see also Sparks v. Brycon*, attached as Exhibit 10) (unregistered contractor); (*see also Norka v. Aldridge*, attached as Exhibit 11) (no permit).

It is irrelevant whether Home Depot mistakenly, accidentally, or intentionally avoided its legal obligations. Illegal conduct is illegal conduct, and unfair and deceptive acts under the CSPA require no *mens rea*. *See* OJI, § 521.01 (Knowledge or Intent not Necessary). However, Home Depot knew of its legal requirements. (Zimmerman Decl., ¶ 23); (Harrington Dep. 130:10-17).

**II.**    **LEGAL STANDARD**

    A.    STANDARD FOR CLASS CERTIFICATION

Within the confines of Rule 23(a) and (b)(3), this Court has broad discretion in deciding whether to certify a class. *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 559 60 (6th Cir. 2007); *In re*

4

*American Medical Systems, Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996). "Rule 23 does not require a district court, in deciding whether to certify a class, to inquire into the merits of the plaintiff's suit." *Beattie*, 511 F.3d at 560.

"Class actions serve an important function in our system of civil justice." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99 (1981). District Courts must liberally interpret Rule 23 to effectuate its objective. *Jordan v. Global Natural Resources, Inc.*, 102 F.R.D. 45, 49 (S.D. Ohio 1984). "The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 617, 117 S. Ct. 2231, 2246, 138 L. Ed. 2d 689 (1997) (quotation omitted).

Plaintiffs bear the burden of showing that the prerequisites for certification have been met, namely, that the case fits the four subsections of Federal Rule of Civil Procedure 23(a): (1) the class must be so numerous that "joinder of all members is impracticable"; (2) there must be "questions of law or fact common to the class"; (3) the claims of the representative party must be "typical" of those of the class; and (4) the representative party must "fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a); *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996). In addition, Plaintiffs seek certification under Rule 23(b)(3), which requires them to establish that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed.R.Civ.P. 23(b)(3).

A decision on class certification is only a determination of "whether the requirements of Rule 23 are met." *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 178, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). While the Court must conduct "a rigorous analysis" of the Plaintiffs' and claims'

fitness for class-wide resolution, it does not do so in relation to the underlying merits. *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982).

## III. LEGAL ANALYSIS

### A. THE CLASS DEFINITION IS PRECISE AND INCLUDES PLAINTIFFS

**The proposed class and subclass definitions are:**

> [Ohio Class:] All Ohio property owners who purchased, whether in-store or otherwise, improvement, repair, or remodeling services ("Work") from Home Depot, to be performed at real property owned by the property owners, in a jurisdiction where Home Depot was required to, but was not at the time, registered and/or licensed to act as a general contractor or contractor, or where Home Depot . . . did not obtain required permits for such Work prior to commencement of the Work.
>
> [Ohio Consumer Subclass:] All members of the Class who own residential property and purchased Work from Home Depot to be performed on their residential property.
>
> [Summit County Consumer Subclass:] All members of the Ohio Consumer Subclass who transacted with Home Depot at a location within Summit County, Ohio, for Work to be performed on their residential property.

(Am. Compl., at ¶¶ 83-85).

The Hidos and Kovacses meet the requirements for all class and subclass membership, with the exception of the Kovacses, who are not in the Summit County Consumer Subclass. (Pohl Decl, ¶ 47). The Plaintiffs all own their homes, and it is undisputed that they paid and contracted with Home Depot (with the Hidos contracting in Summit County) for home improvement services. In both situations, Home Depot was required to be registered as a General Contractor or contractor by the building department in those jurisdictions, and at the time, Home Depot was not so registered. (Zimmerman Decl., ¶¶ 26-27, 29, 31-33). Furthermore, Home Depot was obligated to obtain a permit for the work on the Hidos' kitchen, but failed to do so. (*Id.*, ¶ 28). Therefore, the Plaintiffs are members of these classes.

6

The Ohio Class and both subclasses are proper because they are "defined by objective criteria." *Johnson v. Midland Credit Mgmt. Inc.*, No. 1:05 CV 1094, 2012 U.S. Dist. LEXIS 170420, at *32 (N.D. Ohio Nov. 29, 2012) (quoting *Saltzman v. Pella Corp.*, 257 F.R.D. 471, 475 (N.D.Ill. 2009)). Specifically, Plaintiffs define the class / subclasses by reference to whether the property owner (1) transacted with Home Depot for the performance of work, which is indicated by their being a transaction for that person in Home Depot's transaction data; (2) whether Home Depot failed to obtain legally required registration / license or permits, i.e. legal authority, based on public records from the building departments; and in cases of both subclasses (3) whether the property was residential; and in the case of the Summit County Consumer Subclass (4) whether the transaction occurred at a store location in Summit County.

All information needed to determine class eligibility is in the transactional data. That data is compared to the registration information received from the cities, and class-eligible transactions are identified. Home Depot transacts business with property owners, which can be verified with public records and publicly accessible data. (Pohl Decl., ¶¶ 28-31). Whether Home Depot was registered is a matter of public record fact. There is no reliance or other individualized showing for a particular customer to meet the class definition.

      B.      POHL'S METHODOLOGY MAKES THE CLASS ASCERTAINABLE

Plaintiffs' data expert, Matthew Pohl, has reviewed Home Depot's transaction data. According to Mr. Pohl's review of the data, Home Depot tracks customer names and addresses, project addresses, SKU numbers for each type of construction project scope, transaction amounts, the number for the specific retail store involved, project start and completion dates, and other information. (*Id.*, ¶¶ 12-13, 15-16, 24, 44). Because Home Depot keeps track of this detailed customer and project data, the data can be filtered based on date of the project, date of the transaction, location (and therefore jurisdiction) of the project, to exclude all transactions occurring

7

where and when Home Depot had been registered with the relevant building department. (*Id.*, ¶¶ 35-38). Whether Home Depot was registered or not is a matter of public record. (*Id.*, ¶ 35); (Zimmerman Decl., ¶ 42). Based on the public record responses, Mr. Pohl was able to flag transactions where/when Home Depot was not registered. (Pohl Decl., ¶ 38).

Based on Richard Zimmerman's project SKU list and supplement, Mr. Pohl was able to flag transactions of the relevant SKUs. (*Id.*, ¶¶ 25-27). The transactions flagged as meeting all criteria are class eligible. Specific customer names and addresses of class members can be identified from Home Depot's data. (*Id.*, ¶ 12). Mr. Pohl tested the data to verify that his methodology correctly identified class transactions. (*Id.*, ¶ 40). The class is ascertainable.

Adding up the transaction amounts of all class-eligible flagged transactions provides the actual damages, i.e. restitution. (*Id.*, at ¶ 39.) While the individual amount will vary from one class member to the next, that does not affect whether the class is ascertainable. Simple addition is "still only a mathematical calculation which, in all likelihood, could be performed by a computer spreadsheet program," making class action treatment appropriate. *Pfaff v. Whole Foods Mkt. Grp. Inc.*, No. 109CV02954, 2010 U.S. Dist. LEXIS 104784, at *20 (N.D. Ohio Sept. 29, 2010). The proposed Ohio Class, and subclass definitions are therefore "precise, objective, and presently ascertainable." *In re Polyurethane Foam Antitrust Litig.*, 314 F.R.D. 226, 235 (N.D. Ohio Nov. 17, 2014). Mr. Pohl was able to ascertain class-eligible transactions by algorithm and via software queries of the data, not individualized inquiry. When the names Home Depot redacted are provided, then members can be identified by name and address.

    C.    THE CLAIMS FIT RULE 23(A).

        1.    NUMEROSITY OF THE CLASS

Although there is no strict numerical test for numerosity requirements under Rule 23(a)(1), "a class of 40 or more members raises a presumption of impracticability of joinder based on

8

numbers alone." 1 William B. Rubenstein, Alba Conte and Herbert B. Newberg, *Newberg on Class Actions* § 3:12 (5th Ed. 2017). Although the parties do not know the exact number of unique persons in the class due to Home Depot's redaction of customer names, "[w]here the exact size of the class is unknown but general knowledge and common sense indicate that it is large, the numerosity requirement is satisfied." *Olden v. LaFarge Corp.*, 203 F.R.D. 254, 269 (E.D.Mich.2001) (superseded on unrelated grounds) (quotation omitted). The data contains at least 19,548 transactions in the Ohio Class, 5,528 in the Ohio Consumer Subclass, and 482 in the Summit County Consumer Subclass. (*Pohl Decl.*, at ¶¶ 42-44). There were more than forty names in the data prior to its redaction by Home Depot. (*Id.*, ¶ 14). Common sense indicates the class is large enough to satisfy numerosity requirements. *Olden*, 203 F.R.D. at 269.

### 2. COMMONALITY OF LEGAL OR FACTUAL ISSUES

The proposed classes challenge the ability of Home Depot to charge, receive, and keep money from illegal contracts and transactions. The transactions are illegal because Home Depot required government approval before executing these transactions, and it did not have nor obtain such approval in the form of registration, licensing, or permitting. The proper remedy is restitution. Determination of any of these issues "will resolve an issue that is central to the validity of each one of the claims in one stroke," satisfying the commonality requirement. *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 542 (6th Cir. 2012) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 n.5 (2011)). This requirement is "qualitative rather than quantitative" and differing facts and circumstances among the members are acceptable "as long as they have at least one issue in common." *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1080 (6th Cir. 1996).

There are many common issues of fact and law among all class members. These include, but are not limited to (1) whether the primary purpose of Home Depot's home improvement agreements are purchase of services; (2) whether Home Depot acts as a construction contractor

when it subcontracts the physical labor of the project; (3) whether Home Depot was registered / licensed as a contractor; (4) whether a cause of action exists and what the measure of damages are for Home Depot's lack of registration / licensing; (5) which of the project SKUs require permitting for work to be performed; (6) whether Home Depot was required to be registered / licensed as a contractor for the work in which it engaged; (7) whether it is unfair or deceptive conduct under the CSPA for Home Depot to transact business as a contractor without obtaining its own license or registration; (8) whether it is unfair or deceptive conduct under the CSPA for Home Depot to cause construction work to be performed without required registration; (9) whether Home Depot misrepresents its qualifications or approval; (10) whether a valid cause of action exists for a contractor's failure to obtain legally required registration. These common issues are capable of class-wide determination, and the determination of even one of these would advance the claims of the class and Plaintiffs.

Home Depot will incorrectly claim that varying language of its contracts with its customers precludes commonality. However, a variation in contract language does not change the fact that the property owners hire and pay Home Depot as a construction contractor to cause work to be performed. (Zimmerman Decl., ¶¶ 17-23).

Home Depot will incorrectly claim that different codes in different political subdivisions related to registration or permitting preclude commonality. But a multi-jurisdictional class can be certified despite the application of different jurisdictions' laws and a few variations. *American Medical Systems, Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996); *see also Walsh v. Ford Motor Co.*, 807 F.2d 1000, 1016 (D.C. Cir. 1986). The code requirements here are essentially the same, and have common registration and permitting requirements. (Zimmerman Decl., ¶¶ 24-26, 32-33, 41); *see also* Exhibit 12. Home Depot must register or be licensed to engage in these transactions. If

necessary later, this Court can limit the class or create subclasses if individualizes questions arise, including material differences in the laws. *See, e.g., In re LILCO Securities Litigation*, 111 F.R.D. 663, 670 (E.D.N.Y. 1986).

### 3. TYPICALITY OF THE CLAIMS

Plaintiffs' claims are typical of the class because they are "aligned with those of the represented group, and in pursuing [their] own claims, the named plaintiff[s] will also advance the interests of the class members." *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 542 (6th Cir. 2012) (quoting *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 399 (6th Cir. 1998)). "Simply put, typicality exists when it can be said that 'as goes the claim of the named plaintiff, so go the claims of the class.'" *Pfaff v. Whole Foods Mkt. Grp. Inc.*, No. 109CV02954, 2010 U.S. Dist. LEXIS 104784, at *12 (N.D. Ohio Sept. 29, 2010) (quoting *Sprague*, 133 F.3d at 399). Home Depot has already established typicality with its motion to dismiss. It argued that there was no cause of action in Ohio for failure of a business to have legally required registrations. Such a defense is the same on Plaintiffs' claims and the Class's claims, and has the same impact on all claims.

As previously outlined, the Plaintiffs are members of the proposed Class and Subclasses (except that the Kovacses as to Summit County). Therefore, they will advance the interests and claims of the unnamed class members by pursuing their own claims. They assert the exact same individual causes of action as the proposed Class, have the same legal theories, damage calculations, and proof requirements. The interests of all Class members will be advanced by the Plaintiffs' efforts to advance their own interests and entitlement to damages for their individual claims. In the Sixth Circuits' words, as go the Plaintiffs' claims, so go the claims of the Class.

### 4. ADEQUACY OF THE REPRESENTATIVES AND COUNSEL

Plaintiffs have common interests with the unnamed members of the class, and they will vigorously prosecute the interests of the class through qualified counsel, satisfying the adequacy

11

requirement. *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 543 (6th Cir. 2012) (quoting *In re Am. Med. Sys., Inc.*, 75 F.3d at 1083 (citation omitted)). Because they have the exact same claims, the Plaintiffs' interests are the same as the class. Plaintiffs have demonstrated an understanding of the basic claim—that Home Depot illegally transacts business without required governmental authorization for that line of work—in deposition and by declaration. (F. Hido Decl. ¶ 5; D. Hido Decl. ¶ 5; B. Kovacs Decl. ¶ 6; J. Kovacs Decl. ¶ 5.). They have demonstrated a willingness to vigorously prosecute the interests of the class. (F. Hido Decl. ¶¶ 2-9; D. Hido Decl. ¶¶ 2-10; B. Kovacs Decl. ¶¶ 2-9; J. Kovacs Decl. ¶¶ 2-7). All four named plaintiffs have appeared and participated as required by the Court and discovery, they appeared at their depositions (and for the Kovacses, did so despite having a newborn baby), and they completed written discovery. (*Id.*) They understand their duties to the best interest of the class. (*Id.*) They have remained informed and active in the case. (*Id.*) All Plaintiffs have pledged to prosecute this case vigorously for the benefit of the Class. (*Id.*)

Counsel are also sufficiently experienced and qualified to conduct the case. *Young*, 693 F.3d at 543 (6th Cir. 2012). Attorney Myers, proposed Lead Class Counsel, is experienced in breach of contract claims, construction litigation, consumer litigation, complex litigation, and class action claims. He was previously approved as settlement class counsel with a second firm in a nationwide class action. Attorney Condeni has over 36 years of experience in litigation, including complex and large dollar litigation. Both Attorneys Myers and Condeni have incurred tens of thousands of dollars in expense to pay for experts and prosecution of these claims. The qualifications for Attorneys Myers and Condeni are set forth in the attached declarations. (Myers Decl.) (attached as Exhibit 7); (Condeni Decl.) (attached as Exhibit 8).

Counsel have "worked diligently to identify and investigate the potential claims in this matter," and has "shown an eagerness to prosecute the case," including "time-consuming discovery and extensive briefing," and "well briefed the matters before the Court," justifying appointment as counsel for the class. *Jenkins v. Hyundai Motor Fin. Co.*, No. C2-04-720, 2008 U.S. Dist. LEXIS 23073, at *31 (S.D. Ohio Mar. 24, 2008). In addition to the work outlined in their Declarations, Counsel reviewed thousands of pages of document production, created the Registration analysis attached hereto, and handled discovery disputes and related submissions with the Magistrate Judge. Counsel is adequately qualified.

### D.  CLAIMS SATISFY THE RULE 23(B)(3) PREDOMINANCE REQUIREMENT

"To meet the predominance requirement, a plaintiff must establish that issues subject to generalized proof and applicable to the class as a whole predominate over those issues [of] . . . individualized proof." *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 544 (6th Cir. 2012) (quotation omitted). "This requirement is satisfied when the questions common to the class are 'at the heart of the litigation.'" *Pfaff v. Whole Foods Mkt. Grp. Inc.*, No. 109CV02954, 2010 U.S. Dist. LEXIS 104784, at *16 (N.D. Ohio Sept. 29, 2010) (quoting *Powers v. Hamilton Cnty. Public Defender Comm'n*, 501 F.3d 592, 619 (6th Cir.2007)). As outlined previously, there are common issues of fact and law to be determined in this case. Whether Home Depot acts as construction contractor, what work it does in that role when it subcontracts out the physical labor, whether it is required to register or licensed, whether it had such required license or registration, and what the proper measure of damages are, are all common issues that goes to the heart of the litigation.

Individual damages do not defeat the predominance of liability questions in certifying a class action when liability can be determined on a class-wide basis. *Olden v. LaFarge Corp.*, 383 F.3d 495, 508 (6th Cir. 2004); *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 564 (6th Cir. 2007). Regardless, there are no "individualized" damages: every class member is entitled to the same

measure of damages (restitution of payments to Home Depot). Even if damages were individualized, a liability class would be certified. *Pfaff*, 2010 U.S. Dist. LEXIS 104784, at *17.

      E.      <u>CLAIMS SATISFY THE RULE 23(B)(3) SUPERIORITY REQUIREMENT</u>

Class actions are superior vehicles when plaintiffs are "unlikely to recover more than a small amount." *Siding & Insulation Co. v. Beachwood Hair Clinic, Inc.*, 279 F.R.D. 442, 446 (N.D. Ohio 2012). Here, class members are unlikely to be aware of the underlying illegal conduct. (Zimmerman Decl., ¶¶ 49-50). Furthermore, these claims are literally "small claims," as damages per Ohio Class claimant average on the low end of the small claims court jurisdiction. R.C. 1925.02(A)(1). It would cost more than the damages recoverable to obtain an attorney or expert. Charles Alan Wright and Arthur R. Miller, Federal Practice & Procedure, 7AA, § 1782 (3d ed.) ("[T]ypically the individual claims are for small amounts, which means that the injured parties would not be able to bear the significant litigation expenses involved in suing a large corporation on an individual basis."). Because "it is not economically feasible to obtain relief within . . . small individual suits," the class device is superior. *Young*, 693 F.3d at 545 (6th Cir. 2012) ("[A]ggrieved persons may be without any effective redress unless they may employ the class-action device").

Furthermore, Ohio state courts could not handle the additional 19,548 to 50,000 civil lawsuits, i.e. a 48% increase in the new civil filings in common pleas courts statewide. *Compare* (Pohl Decl., at Ex. B, Tables 3 and 4), *with* Supreme Court of Ohio, *Ohio Courts Statistical Report 2017*, at 17, https://www.supremecourt.ohio.gov/Publications/annrep/17OCSR/2017OCSR.pdf (last visited May 14, 2019). There are insufficient attorneys competent and knowledgeable to handle that many cases, as well. A class action is more manageable than the alternative, and given both unaware customers and small damages, it may be the only route to relief.

This Court should endeavor not to "clos[e] the door of justice to small claimants." *Weeks v. Bareco Oil Co.,* 125 F.2d 84, 90 (7th Cir. 1941). The policy in favor of class treatment of smaller

14

claims is strongest where denial of class certification would effectively terminate litigation. "[I]f there is to be an error made, let it be in favor and not against the maintenance of the class action." *Jordan*, 102 F.R.D. at 49, citing *Esplin v. Hirschi*, 402 F.2d 94, 99 (10th Cir. 1968).

## IV. CONCLUSION

Because the Plaintiffs' claims meet the requirements of Rule 23, and the representatives' class counsel demonstrated the capacity to adequately represent the class, the court should certify the class and appoint the attorneys as Class Counsel.

Respectfully submitted,

| | |
|---|---|
| */s/ Daniel J. Myers*_____ | */s/ J. A. Condeni*_____ |
| Daniel J. Myers, Esq. (0087909) | JOSEPH A. CONDENI (0030275) |
| MYERS LAW, LLC | *CONDENI LAW LLC* |
| 600 East Granger Road, Second Floor | 600 E. Granger Rd., Second Floor |
| Cleveland, Ohio  44131 | Cleveland, Ohio 44131 |
| Phone:  (216) 236-8202 | Phone:  (216) 771-1760 |
| Fax:     (216) 674-1696 | Fax:     (216) 771-3387 |
| DMyers@MyersLawLLC.com | joe@condenilaw.com |
| *Proposed Lead Counsel for Class* | *Proposed Counsel for Class* |
| *Counsel for Plaintiffs* | *Counsel for Plaintiffs* |

## LOCAL CIVIL RULE 7.1(F) CERTIFICATION

This Court recommended this case be placed to the Complex Track. (Doc.#22.) I certify that this memorandum complies to the 15-page limit set forth in LR 7.1(f) for memoranda supporting non-dispositive motions.

## CERTIFICATE OF SERVICE

I certify that the foregoing was electronically filed on May 14, 2019 with the Clerk of Court by using the Court's CM/ECF System. Copies will be served upon counsel of record by, and may be obtained through, the Court CM/ECF Systems.

*/s/ Daniel J. Myers, Esq.*
DANIEL J. MYERS, ESQ. (0087909)